Present: Keenan,[1] Koontz, Lemons, Goodwyn, and Millette, JJ., and Carrico and Lacy, S.JJ.

ADAM CHARLES COPP

v.  Record No. 090345

OPINION BY
SENIOR JUSTICE HARRY L. CARRICO
April 15, 2010

NATIONWIDE MUTUAL
INSURANCE COMPANY, ET AL.

FROM THE CIRCUIT COURT OF MONTGOMERY COUNTY
Robert M. D. Turk, Judge

In this appeal in a declaratory judgment proceeding brought by Nationwide Mutual Insurance Company, the issue is whether the circuit court erred in holding that Nationwide owed no duty to defend Adam Charles Copp, one of its insureds, in a tort action brought against him by Gregory M. Jacobson.  Finding that the circuit court did err in this respect, we will reverse its judgment.

At the time of the incident in question, Copp was an insured under a homeowner's policy and an umbrella policy issued by Nationwide to Copp's parents.  The homeowner's policy provided coverage for an "occurrence," described as bodily injury or property damage "resulting from an accident," but excluded coverage for liability "caused intentionally by or at direction of an insured, including willful acts the result of

_____

[1] Justice Keenan participated in the hearing and decision of this case prior to her retirement from the Court on March 12, 2010.

which the insured knows or ought to know will follow from the insured's conduct."

The umbrella policy provided coverage for personal injury and property damage arising from an "occurrence," meaning an "accident." The umbrella policy contains one clause excluding liability for "personal injury arising out of . . . willful violation of a law by or with the consent of the insured" and a second clause excluding liability for "bodily injury or property damage intended or expected by the insured." However, this latter clause specifically provides that it "does not apply to bodily injury or property damage caused by an insured trying to protect person or property."

BACKGROUND

In the hearing on the motion for declaratory judgment, Nationwide introduced into evidence both insurance policies, the motion for judgment filed by Jacobson against Copp, an examination under oath of Copp, a deposition of Copp, and a deposition of Jacobson. The parties had agreed and stipulated to the use of these materials in the declaratory action.

Copp and Jacobson were not acquainted with one another prior to the incident in question on May 5, 2002. From Copp's examination under oath and deposition, it appears that Copp and Sean Manley, one of his roommates in an apartment at Blacksburg, had just finished their final examinations at Virginia

Polytechnic Institute and State University and were celebrating by playing a drinking game called "beer pong."  Two individuals they "had never seen . . . before" entered the apartment through a "cracked" door and asked if they could challenge Copp and Manley to a game.

After about ten minutes of playing the game, one of the newcomers, Carson Dugger, made a remark that offended Copp, who then asked the two men to leave the apartment.  When they did not leave, Copp put his hand on Dugger's arm, told him to "[g]et out," escorted him to the door, opened it, and pushed him into the hallway.  The two then engaged in an exchange of profanity in loud voices.

Copp's roommate, Manley, stepped between Copp and Dugger and tried to get both to calm down.  Manley got Copp back into their apartment and locked the door.  Dugger was "outside still yelling" so Copp, angry by now, exited through another door of the apartment to try to talk with Dugger to get him to leave. When Copp opened the door, he was confronted with several people who were attending a gathering on the floor above, had heard the shouting between Copp and Dugger, and had come downstairs to investigate.  One of these individuals was Jacobson, who was a friend of Dugger.

When Copp stepped out of the door, there were four or five people between him and Dugger, including Jacobson.  Copp tried

3

to walk forward to get to Dugger but three of the people pushed him back, wrestled with him, twisted his arm, and kept him "from walking anywhere."  At one point, he was pinned against the stairwell, but he was able to stand up and push one of the people off of him and then "someone, one of those individuals took a swing at [him] and [he] was able to duck [his] head and dodge the swing."  He realized that he was "outnumbered" and that his "safety definitely was in jeopardy," and he was able to get away from "the other individual" who was holding him and free himself.

"[I]n the process of getting free," Copp "swung [his] arm [with his fist closed] over top of someone's head, kind of like a swim movement in football" and, "with that move," Copp thought he "possibly struck Gregory Jacobson unintentionally."

Jacobson fell to the floor.  Copp heard someone say "[l]et's beat the [expletive] out of him," and he left immediately, going to the apartment of a friend.

In Jacobson's deposition, he stated that he did not "remember any of [what happened at the apartment] except [his] trying to tell [Copp] to calm down."  However, he did remember getting between Copp and Dugger "because [Dugger was] his friend."  He also remembered that he did not see anyone touch or "take a punch at" Copp, that Copp was "throwing punches [in] the air at people," and that "Copp intentionally hit [him]."

4

Jacobson was knocked unconscious by the blow to his head and did not regain consciousness until he was in an ambulance on the way to a hospital. It was determined that his orbital socket was fractured, requiring surgery on two occasions.

Copp was charged with assault and battery on Jacobson under Code § 18.2-57, and he entered a plea of no contest to the charge. He was ordered to enroll in an anger management class, perform community service, serve a period of probation, and reimburse Jacobson for his "initial hospital visit and ambulance ride." In addition, on the morning after the incident in question, Copp went to the apartment above his "to apologize and talk with Ryan Salomon," who hosted the gathering Jacobson was attending before the commotion occurred downstairs. Copp felt he needed to apologize to Salomon "in part" for disturbing "his peaceful party." Salomon told Copp he would "forward [Copp's] apology" to "the person whom [Copp] had hit."

Jacobson's motion for judgment consisted of two counts. Count I was a claim for compensatory damages for assault and battery alleging that Copp "willfully and intentionally hit [Jacobson]" and that Copp's "actions were unjustified [and] malicious." Count II was a claim for punitive damages for assault and battery with similar allegations of willful, intentional, unjustified, and malicious conduct on the part of Copp.

5

Nationwide and Copp each filed a memorandum of law. Nationwide argued that it did not have a duty to defend or owe coverage for any of the intentional acts alleged in the motion for judgment because they "cannot be considered an accident or accidental under the terms of the policies." Copp argued that Nationwide owed him the duty to defend and provide coverage based upon the limitation in the umbrella policy providing that the exclusion of liability for bodily injury or property damage intended or expected by the insured "does not apply to bodily injury or property damage caused by an insured trying to protect person or property."

In a letter opinion, the circuit court stated that although it had reviewed all the transcripts and the memoranda in arriving at its decision, it felt compelled to resolve the issue based on the pleadings, " 'and not by the testimony of witnesses or other evidence' " (quoting Ted Lansing Supply Co. v. Royal Aluminum & Const. Corp., 221 Va. 1139, 1141, 277 S.E.2d 228, 230 (1981)). The court held that "[c]learly under the facts as alleged, [Jacobson's] claim against [Copp] is for an intentional act" and that "[b]ased upon the language in the insurance contract and the pleadings as set forth, . . . Nationwide is not obligated to defend [Copp] in the underlying tort claim."

While the court purported to quote all the exclusionary clauses in the two policies, it omitted that part of the

6

umbrella policy providing that the exclusion for intended or expected bodily injury and property damage "does not apply to bodily injury or property damage caused by an insured trying to protect person or property."

STANDARD OF REVIEW

The interpretation of a contract presents a question of law subject to de novo review. Additionally,

> [c]ourts interpret insurance policies, like other contracts, in accordance with the intention of the parties gleaned from the words they have used in the document. Each phrase and clause of an insurance contract should be considered and construed together and seemingly conflicting provisions harmonized when that can be reasonably done, so as to effectuate the intention of the parties as expressed therein.

Furthermore,

> [i]nsurance policies are contracts whose language is ordinarily selected by insurers rather than by policyholders. The courts, accordingly, have been consistent in construing the language of such policies, where there is doubt as to their meaning, in favor of that interpretation which grants coverage, rather than that which withholds it. Where two constructions are equally possible, that most favorable to the insured will be adopted. Language in a policy purporting to exclude certain events from coverage will be construed most strongly against the insurer.

Seals v. Erie Insurance Exchange, 277 Va. 558, 562, 674 S.E.2d 860, 862 (2009) (internal quotation marks and citations omitted).

7

> [O]n appeal we are not bound by the trial court's interpretation of the contract provision at issue; rather, we have an equal opportunity to consider the words of the contract within the four corners of the instrument itself.

Eure v. Norfolk Shipbuilding & Drydock Corp., 263 Va. 624, 631, 561 S.E.2d 663, 667 (2002) (citation omitted).

## ANALYSIS

> [A]n insurer's duty to defend . . . is broader than [the] obligation to pay, and arises whenever the complaint alleges facts and circumstances, some of which would, if proved, fall within the risk covered by the policy.

> . . . .

> [T]he obligation to defend is not negated merely by the unsuccessful assertion of a claim otherwise facially falling within the risks covered by the policy. Various defenses applicable to specific factual circumstances may be successfully asserted against claims otherwise covered by the policy. The insurer has the obligation to defend the insured in such circumstances even though the obligation to pay is not ultimately invoked.

Virginia Elec. & Power Co. v. Northbrook Property & Cas. Insurance Co., 252 Va. 265, 268-69, 475 S.E.2d 264, 265-66 (1996) (internal quotation marks and citation omitted).

Nationwide contends that in determining whether an insurance company has a duty to defend the insured under a contract of insurance, the allegations in the underlying complaint and the insurance policy are examined, and if the complaint alleges facts and circumstances, some of which, if proved, would fall within the risk covered by the policy, then

8

the obligation to defend arises. However, Nationwide maintains, matters raised by the insured in defense of the claim are not to be considered in evaluating whether there is a duty to defend.

Continuing, Nationwide submits that if "it appears clearly that the insurer would not be liable under its contract for any judgment based upon the allegations in the complaint (and not considering the defenses), it has no duty to defend." This evaluation process, Nationwide asserts, is known as the "eight corners rule" because the analysis concerns only the four corners of the policy and the four corners of the complaint.

Here, Nationwide says, the four corners of the complaint only alleged intentional torts, and the insurance policies provided coverage only for an "occurrence," which is defined as "resulting from an accident." Therefore, Nationwide concludes, "there were no facts or circumstances alleged in the complaint that would fall within the risk covered by the policy," and "the trial court could not consider Copp's claim that his acts were made in self defense, because matters raised by the insured in defense of the claim are not to be considered in evaluating whether there is a duty to defend."

In several prior decisions in this type of case, we have applied the rule that only the allegations in the complaint and the provisions of the insurance policy are to be considered in deciding whether there is a duty on the part of the insurer to

9

defend and indemnify the insured.  Brenner v. Lawyers Title Insurance Corp., 240 Va. 185, 189, 192, 397 S.E.2d 100, 102, 104 (1990);[2] Reisen v. Aetna Life & Cas. Co., 225 Va. 327, 331, 302 S.E.2d 529, 531 (1983); Travelers Indemnity Co. v. Obenshain, 219 Va. 44, 46, 245 S.E.2d 247, 249 (1978); Norman v. Insurance Co. of North America, 218 Va. 718, 724, 239 S.E.2d 902, 905-06 (1978); London Guarantee & Accident Co. v. C. B. White & Bros., Inc., 188 Va. 195, 199-200, 49 S.E.2d 254, 256 (1948).

None of our prior decisions, however, has involved the type of situation we have here, where in one of the four corners of an insurance policy there is a provision specifically stating that an exclusion "does not apply to bodily injury or property damage caused by an insured trying to protect person or property."  This provision must be considered and construed

---

[2] Nationwide cites Brenner six times in its opening brief. But the case is not as hidebound as Nationwide makes it out to be.  Although we said that an insured in this type of case is limited to "the claim actually made" in the complaint and cannot in a cross-bill add a claim "for which there may have been coverage,"
240 Va. at 192, 397 S.E.2d at 104, we also stated as follows:

> The duty to defend is to be determined initially from the allegations of the complaint.  But if it is doubtful whether the case alleged is covered by the policy, the refusal of the insurer to defend is at its own risk.  And, if it be shown subsequently upon development of the facts that the claim is covered by the policy, the insurer necessarily is liable for breach of its covenant to defend.

Id. at 189, 397 S.E.2d at 102 (citation omitted) (emphasis added).

10

together with each phrase of the umbrella policy.  Seals v. Erie Insurance Exchange, 277 Va. at 562, 674 S.E.2d at 862.

Nationwide opines that what Copp really wants this Court to do is to "create an exception to [the] well settled law when the insured intends to argue self defense."  But Copp has not asked us to create any exceptions.  He says that the exclusion of coverage for "bodily injury or property damage intended or expected by the insured . . . in fact contains an exception that the Circuit Court wholly ignored," i.e., the proviso that "[t]his does not apply to bodily injury or property damage caused by an insured trying to protect person or property."  Copp asserts that "[i]f permitted to stand, the Circuit Court's ruling would have the effect of denying coverage in the only circumstance in which the exception to the intentional acts exclusion could ever apply."

Although the circuit court stated in its opinion that it had "reviewed all of the transcripts" of the parties, it did not say that it had considered what was contained in the transcripts in making its decision.  To the contrary, it said it felt "compelled to initially resolve this issue based on the pleadings," because " '[t]he issues in a case are made by the pleadings, and not by the testimony of witnesses or other evidence' " (quoting Ted Lansing Supply Co., 221 Va. at 1141, 277 S.E.2d at 230).  The underscoring was supplied by the

11

circuit court, not this Court. And the court made its decision that Nationwide was not obligated to defend Copp in the underlying tort action "[b]ased upon the language in the insurance contract and the pleadings as set forth."

We agree with Copp that the umbrella policy contains an exception to the exclusion relating to "bodily injury or property damage intended or expected by the insured." The exception is found in one of the four corners of the insurance contract and stands on an equal footing with other provisions thereof. It cannot be ignored or explained away on specious grounds. And it requires consideration of an insured's claim that he or she caused bodily injury or property damage trying to protect person or property in evaluating whether there is a duty to defend in a given case.

We hold that this is such a case and that Nationwide has the duty under its umbrella policy to defend Copp in the underlying tort action. Copp's version of events is not inherently incredible, and Nationwide does not contend that it is. The trier-of-fact could believe his version and return a verdict in his favor or it could disbelieve him and return a verdict against him. But the fact that the latter result might occur does not negate Nationwide's duty to defend in the first instance. See Virginia Elec. & Power Co. v. Northbrook Property & Cas. Co., 252 Va. at 269, 475 S.E.2d at 266.

12

Nationwide argues, however, that "even assuming for the purpose of argument that coverage were initially established by Copp under the eight corners rule, there was more than sufficient factual evidence for the trial court to conclude that Copp's acts were not caused by an insured trying to protect person or property, and thus excluded under the terms of the policy."[3]  But there was no such conclusion made by the circuit court in this case, and whether Copp's acts were or were not caused by his trying to protect person or property must be left to the fact-finder in the subsequent trial of the underlying tort action.[4]

## CONCLUSION

Accordingly, we will reverse the judgment of the circuit court and remand the case with direction to enter an order declaring the rights and duties of the parties consistent with the views expressed in this opinion.

<u>Reversed and remanded</u>.

---

[3] Nationwide also argues that Copp's actions caused "a willful violation of the law" and that Copp's "no contest" plea "is *prima facie* evidence relevant to whether [Copp] intentionally assaulted and battered Jacobson."  However, this argument is defaulted.  It is made for the first time on appeal, and we will not consider it.  Rule 5:25.

[4] We do not decide whether Copp had coverage under the homeowner's policy.  That question is not before us.