715 S.E.2d 28 (2011)
282 Va. 252
The AES CORPORATION
v.
STEADFAST INSURANCE COMPANY.
Record No. 100764.
Supreme Court of Virginia.
September 16, 2011.
*29 L. Steven Emmert (Anthony T. Pierce; Richard K. Welsh, Washington, DC; Rex Heinke, Los Angeles, CA; Sykes Bourdon, Ahern & Levy, Virginia Beach; Akin Gump Strauss Hauer & Feld, Washington, DC, on briefs) for appellant.
Leah W. Sears (Marci A. Eisenstein; Catherine M. Masters, Chicago, IL; Tamera M. Woodard, Atlanta, GA; William F. Stewart; Robert E. Worst; Schiff Hardin; Nelson Levine de Luca & Horst; Kalbaugh, Pfund & Messersmith, on brief) for appellee.
Amici Curiae: Complex Insurance Claims Litigation Association and American Insurance Association (Laura A. Foggan; Gregory J. Langlois, Washington, DC; Wiley Rein, on brief) in support of appellee.
Present: KINSER, C.J., LEMONS, GOODWYN, MILLETTE, and MIMS, JJ., and CARRICO and KOONTZ, S.JJ.
Opinion by Justice S. BERNARD GOODWYN.
In this appeal from a judgment in a declaratory judgment action, we consider whether the circuit court erred in ruling that a civil complaint filed against The AES Corporation (AES) did not allege an "occurrence" as that term is defined in AES's contracts of insurance with Steadfast Insurance Company (Steadfast), and that Steadfast, therefore, did not owe AES a defense or liability coverage.

Background
AES is a Virginia-based energy company that holds controlling interests in companies specializing in the generation and distribution of electricity in numerous states, including California. Steadfast is an Illinois-based company and indirect subsidiary of Zurich Financial Services, a global insurance provider. AES paid premiums to Steadfast for *30 commercial general liability (CGL) policies from 1996 to 2000 and 2003 to 2008.
In February 2008, the Native Village of Kivalina and City of Kivalina (Kivalina), a native community located on an Alaskan barrier island, filed a lawsuit (the Complaint) in the United States District Court for the Northern District of California against AES and numerous other defendants for allegedly damaging the village by causing global warming through emission of greenhouse gases. See Native Vill. of Kivalina v. ExxonMobil Corp., 663 F.Supp.2d 863 (N.D.Cal. 2009). AES requested Steadfast provide a defense and insurance coverage, pursuant to the terms of the CGL policies, for the claims alleged in the Complaint. Steadfast provided AES a defense under a reservation of rights and filed a declaratory judgment action, which is the subject of this appeal, in the Circuit Court of Arlington County.
In the declaratory judgment action, Steadfast claimed that it did not owe AES a defense or indemnity coverage for damage allegedly caused by AES's contribution to global warming based on three grounds: (1) the Complaint did not allege "property damage" caused by an "occurrence," which was necessary for there to be coverage under the policies; (2) any alleged injury arose prior to the inception of Steadfast's coverage; and (3) the claims alleged in the Complaint fell within the scope of the pollution exclusion stated in AES's policies.
The parties subsequently filed cross-motions for summary judgment, both claiming that whether Steadfast had a duty to defend AES against the Complaint could be decided by examining the "eight corners" of the Complaint and the CGL policies. The circuit court denied AES's motion for summary judgment and granted Steadfast's motion for summary judgment, holding that the Complaint does not allege an "occurrence" as that term is defined in the CGL policies, and thus, the allegations in the Complaint are not covered under those policies.

The Insurance Policies
In each of the CGL policies AES purchased from Steadfast, Steadfast agreed to defend AES against suits claiming damages for bodily injury or property damage, if such damage "is caused by an `occurrence.'" The policies define "occurrence" as follows:" `Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful condition." The policies specify that Steadfast has no duty to defend or indemnify AES against damage suits to which the policies do not apply.

The Complaint
Kivalina is located on the tip of a small barrier reef on the northwest coast of Alaska, approximately seventy miles north of the Arctic Circle. As pertinent to this appeal, in the Complaint, Kivalina alleges that AES engaged in energy-generating activities using fossil fuels that emit carbon dioxide and other greenhouse gases, and that the emissions contributed to global warming, causing land-fast sea ice protecting the village's shoreline to form later or melt earlier in the annual cycle. This allegedly exposed the shoreline to storm surges, resulting in erosion of the shoreline and rendering the village uninhabitable.
The Complaint alleges that AES "intentionally emits millions of tons of carbon dioxide and other greenhouse gases into the atmosphere annually." (Emphasis added.) The Complaint further alleges that AES "knew or should have known of the impacts of [its] emissions" of carbon dioxide, but that "[d]espite this knowledge" of the "impacts of [its] emissions on global warming and on particularly vulnerable communities such as coastal Alaskan villages," AES "continued [its] substantial contributions to global warming." (Emphasis added.) Kivalina then dedicates sixteen pages and sixty-six paragraphs of its sixty-nine page Complaint to explaining global warming.
The Complaint alleges a civil conspiracy by power, coal and oil companies to mislead the public about the science of global warming. It states that "[d]espite the attempts by certain defendants to make the cause of climate change controversial in the popular media, there has been for many years an overwhelming scientific consensus that human activity that releases greenhouse gases is causing a change in the Earth's climate." The Complaint alleges that there is "a clear scientific *31 consensus that global warming is caused by emissions of greenhouse gases, primarily carbon dioxide from fossil fuel combustion and methane releases from fossil fuel harvesting."
The Complaint recounts published articles, books and testimony in which scientists have confirmed the existence of global warming, and discusses current and projected global warming impacts, stating that "[e]mpirical evidence underlies the scientific consensus that global warming has arrived." It then discusses the special injuries to Kivalina's property interests allegedly resulting from global warming.
The Complaint then states three claims for relief against AES. Two causes of action are for nuisance and the other is for concert of action. The first claim for relief is entitled "Federal Common Law: Public Nuisance." In support of its claims for federal common law public nuisance, Kivalina asserts the following:
251. Defendants' greenhouse gas emissions are a direct and proximate contributing cause of global warming and of the injuries and threatened injuries Plaintiffs suffer.
252. Defendants know or should know that their emissions of greenhouse gases contribute to global warming, to the general public injuries such heating will cause, and to Plaintiffs' special injuries. Intentionally or negligently, defendants have created, contributed to, and/or maintained the public nuisance.
253. Defendants, both individually and collectively, are substantial contributors to global warming and to the injuries and threatened injuries Plaintiffs suffer.
. . . . .
255. Defendants knew that their individual greenhouse gas emissions were, in combination with emissions and conduct of others, contributing to global warming and causing injuries to entities such as the Plaintiffs.
. . . . .
261. Defendants are jointly and severally liable to Kivalina under the federal common law of public nuisance.
The second claim for relief asserted against AES is entitled "State Law: Private and Public Nuisance." Kivalina asserts as follows:
264. Defendants' emissions of carbon dioxide, by contributing to global warming, constitute a substantial and unreasonable interference with public rights, including, inter alia, the rights to use and enjoy public and private property in Kivalina. . . .
265. Defendants have engaged and continue to engage in intentional or negligent acts or omissions that unreasonably interfere with the use and enjoyment of Plaintiffs' properties, and/or work a substantial annoyance, inconvenience, or injury to the public, and are therefore liable under the applicable state statutory and/or common law of private and public nuisance.
266. Defendants, individually and collectively, are substantial contributors to global warming and to the injuries and threatened injuries suffered by Plaintiffs....
267. Defendants are jointly and severally liable to Plaintiffs under the applicable state statutory and/or common law of private and public nuisance.
The other claim for relief against AES is entitled "Concert of Action." Kivalina alleges that the "[d]efendants have engaged in and/or are engaging in tortious acts in concert with each other or pursuant to a common design" in creating, contributing to and/or maintaining a public nuisance, specifically, global warming.

Analysis
We awarded AES an appeal on the following assignment of error:
The trial court erred in summarily ruling that the underlying complaint did not allege an "occurrence" covered by the insurance policies.
Both AES and Steadfast agree that it is a well-established principle, consistently applied in this Commonwealth, that only the allegations in the complaint and the provisions of the insurance policy are to be considered *32 in deciding whether there is a duty on the part of the insurer to defend and indemnify the insured. See Brenner v. Lawyers Title Ins. Corp., 240 Va. 185, 189, 192, 397 S.E.2d 100, 102, 104 (1990); Reisen v. Aetna Life & Cas. Co., 225 Va. 327, 331, 302 S.E.2d 529, 531 (1983); Travelers Indem. Co. v. Obenshain, 219 Va. 44, 46, 245 S.E.2d 247, 249 (1978); Norman v. Ins. Co. of N. Am., 218 Va. 718, 724, 239 S.E.2d 902, 905-06 (1978); London Guar. & Accident Co. v. C.B. White & Bros., Inc., 188 Va. 195, 199-200, 49 S.E.2d 254, 256 (1948); see also Town Crier, Inc. v. Hume, 721 F.Supp. 99, 102 n. 12 (E.D.Va.1989)("an insurer's duty to defend is determined solely by the allegations in the pleadings"); American & Foreign Ins. Co. v. Church Schools in the Diocese of Virginia, 645 F.Supp. 628, 631 n. 1 (E.D.Va.1986). This principle is commonly known as the "eight corners rule" because the determination is made by comparing the "four corners" of the underlying complaint with the "four corners" of the policy, to determine whether the allegations in the underlying complaint come within the coverage provided by the policy. See Copp v. Nationwide Mut. Ins. Co., 279 Va. 675, 682-83, 692 S.E.2d 220, 224 (2010); America Online, Inc. v. St. Paul Mercury Ins. Co., 207 F.Supp.2d 459, 465-66 (E.D.Va.2002).
"[A]n insurer's duty to defend ... is broader than [the] obligation to pay, and arises whenever the complaint alleges facts and circumstances, some of which would, if proved, fall within the risk covered by the policy." Virginia Elec. & Power Co. v. Northbrook Prop. & Cas. Ins. Co., 252 Va. 265, 268-69, 475 S.E.2d 264, 265-66 (1996) (internal quotation marks and citation omitted); see also Copp, 279 Va. at 682, 692 S.E.2d at 224. On the other hand, if it appears clearly that the insurer would not be liable under its contract for any judgment based upon the allegations, it has no duty even to defend. Travelers Indem. Co., 219 Va. at 46, 245 S.E.2d at 249.
The relevant policies provide coverage for damage resulting from an "occurrence," and define an occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful condition." The terms "occurrence" and "accident" are "synonymous and ... refer to an incident that was unexpected from the viewpoint of the insured." Utica Mut. Ins. Co. v. Travelers Indem. Co., 223 Va. 145, 147, 286 S.E.2d 225, 226 (1982). We have held that an "accident" is commonly understood to mean "an event which creates an effect which is not the natural or probable consequence of the means employed and is not intended, designed, or reasonably anticipated." Lynchburg Foundry Co. v. Irvin, 178 Va. 265, 271, 16 S.E.2d 646, 648 (1941). An accidental injury is one that "happen[s] by chance, or unexpectedly; taking place not according to the usual course of things; casual; fortuitous." Fidelity & Guar. Ins. Underwriters, Inc. v. Allied Realty Co., 238 Va. 458, 462, 384 S.E.2d 613, 615 (1989).
Kivalina alleges that AES intentionally released tons of carbon dioxide and greenhouse gases into the atmosphere as part of its electricity-generating operations. We have held that "[a]n intentional act is neither an `occurrence' nor an `accident' and therefore is not covered by the standard policy." Utica Mut., 223 Va. at 147, 286 S.E.2d at 226; see Reisen, 225 Va. at 331-32, 302 S.E.2d at 531 (duty to defend excused when insured's act of intentionally striking plaintiff fell within exclusion in policy); Travelers Indem. Co., 219 Va. at 47, 245 S.E.2d at 249 (insurer had no duty to defend where a complaint alleged only intentional torts). If a result is the natural and probable consequence of an insured's intentional act, it is not an accident. Resource Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 637 (4th Cir. 2005).
However, even though the insured's action starting the chain of events was intentionally performed, when the alleged injury results from an unforeseen cause that is out of the ordinary expectations of a reasonable person, the injury may be covered by an occurrence policy provision. 20 Eric M. Holmes, Appleman on Insurance 2d § 129.2(I)(5) (2002 & Supp.2009). In such a context, the dispositive issue in determining whether an accidental injury occurred is not whether the action *33 undertaken by the insured was intended, but rather whether the resulting harm is alleged to have been a reasonably anticipated consequence of the insured's intentional act. See id.; see also Fidelity & Guar. Ins., 238 Va. at 462, 384 S.E.2d at 615. Thus, resolution of the issue of whether Kivalina's Complaint alleges an occurrence covered by the policies turns on whether the Complaint can be construed as alleging that Kivalina's injuries, at least in the alternative, resulted from unforeseen consequences that a reasonable person would not have expected to result from AES's deliberate act of emitting carbon dioxide and greenhouse gases.
AES notes that the Complaint alleges that AES "[i]ntentionally or negligently" created the nuisance, global warming, and that the defendants' concerted action in causing the nuisance "constitutes a breach of duty." (Emphasis added.) AES maintains that this language shows that Kivalina alleged in the Complaint both intentional and negligent tortious acts. Citing Parker v. Hartford Fire Ins. Co., 222 Va. 33, 278 S.E.2d 803 (1981), AES asserts that an insured is entitled to a defense when negligence is alleged.
AES further asserts that because the Complaint alleges that AES "knew or should know" that its activities in generating electricity would result in the environmental harm suffered by Kivalina, Kivalina alleges, at least in the alternative, that the consequences of AES's intentional carbon dioxide and greenhouse gas emissions were unintended. AES reasons that the damage alleged by Kivalina is therefore accidental from the viewpoint of AES and within the definition of an "occurrence" under the CGL policies. In essence, AES argues that the damage to the village resulting from global warming caused by AES's electricity-generating activities was accidental because such damage may have been unintentional.
We disagree with AES. Applying the "eight corners" rule, we must consider the terms of the relevant insurance policies and the allegations in the Complaint. Unlike the policy at issue in Parker,[*] the instant policies do not provide coverage or a defense for all suits against the insured alleging damages not caused intentionally. Likewise, the policies in this case do not provide coverage for all damage resulting from AES's negligent acts. The relevant policies only require Steadfast to defend AES against claims for damages for bodily injury or property damage caused by an occurrence or accident.
In the Complaint, Kivalina plainly alleges that AES intentionally released carbon dioxide into the atmosphere as a regular part of its energy-producing activities. Kivalina also alleges that there is a clear scientific consensus that the natural and probable consequence of such emissions is global warming and damages such as Kivalina suffered. Whether or not AES's intentional act constitutes negligence, the natural and probable consequence of that intentional act is not an accident under Virginia law.
Kivalina alleges that AES knew or should have known the damage that its activities would cause, that AES was negligent if it did not know, and that AES was negligent in acting in concert with other defendants in creating a nuisance.
However, allegations of negligence are not synonymous with allegations of an accident, and, in this instance, the allegations of negligence do not support a claim of an accident. Even if AES were negligent and did not intend to cause the damage that occurred, the gravamen of Kivalina's nuisance claim is that the damages it sustained were the natural and probable consequences of AES's intentional emissions.
Kivalina asserts that the deleterious results of emitting carbon dioxide and greenhouse gases is something that AES knew or should have known about. Inherent in such an allegation is the assertion that the results were a consequence of AES's intentional actions that a reasonable person would anticipate. When the insured knows or should have known of the consequences of his actions, there is no occurrence and therefore no coverage. 1 Barry R. Ostrager and Thomas *34 R. Newman, Handbook on Insurance Coverage Disputes § 8.03[c] (15th ed.2011). If an insured knew or should have known that certain results would follow from his acts or omissions, there is no "occurrence" within the meaning of a comprehensive general liability policy. See 1 Ostrager & Newman, Handbook on Insurance Coverage Disputes § 8.03[c] (citing City of Carter Lake v. Aetna Cas. & Sur. Co., 604 F.2d 1052, 1058-59 (8th Cir.1979)); 20 Holmes, Appleman on Insurance 2d § 129(I)(5). The Complaint alleges, from the viewpoint of AES, that AES should have anticipated the damages resulting from its emitting carbon dioxide and greenhouse gases. Even if AES were actually ignorant of the effect of its actions and/or did not intend for such damages to occur, Kivalina alleges its damages were the natural and probable consequence of AES's intentional actions. Therefore, Kivalina does not allege that its property damage was the result of a fortuitous event or accident, and such loss is not covered under the relevant CGL policies.

Conclusion
For these reasons, we will affirm the judgment of the circuit court.
Affirmed.
Senior Justice KOONTZ, with whom Senior Justice CARRICO joins, concurring in the result.
I concur in the holding of the majority opinion that the circuit court did not err in ruling that Steadfast Insurance Company ("Steadfast") did not owe a defense to The AES Corporation ("AES") in the lawsuit brought by The Native Village of Kivalina and the City of Kivalina (collectively, "Kivalina") against AES, a Virginia-based energy company specializing in the generation and distribution of electricity in numerous states. I write separately, however, to make clear and emphasize that the holding in this case is limited to the unique language of the allegations of that lawsuit and the particular definitions of an insured "occurrence" contained in AES' commercial general liability ("CGL") policies with Steadfast.
The majority correctly notes that when considering whether an insurer has a duty to provide its policyholder with a defense, Virginia follows the "eight corners rule," confining the inquiry to the language of the complaint and the policy. Likewise, the majority acknowledges the well-established rule in Virginia that an insurer's duty to defend its policyholders is broader than its duty to indemnify them, and that the courts should not absolve an insurer of the duty to defend its policyholders unless it is clear and certain that there would be no duty whatsoever to indemnify the insured "`under its contract for any judgment based on the allegations of the ... complaint.'" Carstensen v. Chrisland Corp., 247 Va. 433, 443, 442 S.E.2d 660, 666 (1994) (quoting Brenner v. Lawyers Title Ins. Corp., 240 Va. 185, 193, 397 S.E.2d 100, 104 (1990)).
It is this latter principle which is implicated by Steadfast's argument. That argument focuses on the allegations of the Kivalina complaint which assert that AES' actions were intentional and had foreseeable consequences about which AES "knew or should have known" and, thus, that the resulting "occurrence" was not an "accident" within the meaning of the CGL policies even if those actions were, as the complaint alleges, also "negligent." I share the concern expressed by AES that this argument paints with too broad a stroke.
In my opinion, the majority does not adequately explain that the argument which Steadfast makes here would not be applicable to the vast majority of cases where a policyholder seeks to have his insurance company provide him with a defense for an accidental tortious injury. In distinguishing Parker v. Hartford Fire Ins. Co., 222 Va. 33, 278 S.E.2d 803 (1981), the majority relies on differences in the language of the policy of insurance in that case. Unlike Steadfast's policies, the policy in Parker expressly excluded coverage for bodily injury or property damage caused intentionally, but nonetheless required a defense to be afforded for any suit in which bodily injury or property damage was alleged. Id. at 34, 278 S.E.2d at 804.
The distinction the majority draws between Parker and this case does not resolve my concern that this case could be misconstrued as departing from the rule that the *35 insurer's duty to defend should be abrogated only where it is certain that no liability could arise from the contract of insurance. Instead the majority bases the duty to defend on the foreseeability of the harm arising from the insured's act about which he "knew or should have known" when undertaking the act.
Parker is the leading case on this issue and is instructive on this point. In Parker, the insureds sought a defense and coverage from their insurer against a suit that alleged that they had constructed a silo over a family burial ground that was subject to a reservation of rights within the insureds' chain of title. Id. The trial court held that the insurer had no duty to defend because the complaint alleged that the purposeful construction of the silo constituted an intentional trespass on the burial ground and, thus, there was no negligence or accident that would be indemnified under the insurance policy. Id. at 35, 278 S.E.2d at 804. We reversed this judgment. Concluding that the existing pleadings "could have supported a judgment of unintentional trespass," we held that both a defense and coverage were owed to the insured. Id.
Thus, in my view the distinction between Parker and the present case is not in the slight differences of the "four corners" of two policies of insurance, but rather in the differences in the "four corners" of the two complaints. Both policies provide insurance against negligent tortious injuries, not intentional ones. Both policies exclude coverage for the natural and probable consequences of an intentional act.
The dissimilarity between the allegations in the Kivalina complaint and that in Parker, and by extension in most other tort actions for bodily injury or property damage, is in what the relevant intentional or negligent act is alleged in the complaint to have been. In Parker, the construction of the silo, a clearly intentional act, was not the relevant act. Rather the issue was whether trespass on the reserved land was intentional or merely negligent. If the former were the case, there would have been no liability for the insurer. Concluding, however, that as pled the trespass could have been accidental, we held that both a defense and coverage were owed to the insured.
In Kivalina, the release of greenhouse gases in the production of energy was alleged to have been an intentional act that was done despite the knowledge, or presumed knowledge, that damage to the environment would result. This act was also inherently negligent because the resulting injury was the natural and probable consequence of the means employed to do the act. Cf. Lynchburg Foundry Co. v. Irvin, 178 Va. 265, 271, 16 S.E.2d 646, 648 (1941).
Thus, under the facts of this case, I agree with the majority that the injury to Kivalina alleged in the complaint to have been caused by AES did not arise from an "accident" as covered by the CGL policies issued by Steadfast to AES because the complaint does not allege that AES's intentional acts were done negligently. The complaint alleges that AES was "negligent" only in the sense that it "knew or should have known" that its actions would cause injury no matter how they were performed.
Under the CGL policies, Steadfast would not be liable because AES's acts as alleged in the complaint were intentional and the consequence of those acts was not merely foreseeable, but inevitable. In other words, where the harmful consequences of an act are alleged to have been eminently foreseeable, choosing to perform the act deliberately, even if in ignorance of that fact, does not make the resulting injury an "accident" even when the complaint alleges that such action was negligent.
For these reasons, I concur in the result reached by the majority affirming the judgment of the circuit court finding that Steadfast was not required to provide AES with a defense in the action filed against it by Kivalina.
NOTES
[*] In Parker, the relevant policy, while excluding coverage for bodily injury or property damage caused intentionally, otherwise required the insurer to defend any suit against the insured alleging bodily injury or property damage. 222 Va. at 34, 278 S.E.2d at 803.