COURT OF APPEALS OF VIRGINIA

Present:  Judges Athey, Causey and Chaney
Argued at Williamsburg, Virginia

UNPUBLISHED

HESSIE WAGNER

v.        Record No. 0318-24-1

MEMORANDUM OPINION* BY
JUDGE DORIS HENDERSON CAUSEY
OCTOBER 14, 2025

FOOD LION, LLC, ET AL.

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

Philip J. Geib (Philip J. Geib, P.C., on brief), for appellant.

Lindsay L. Blumberg (Midkiff, Muncie & Ross, P.C., on brief), for appellees.


Hessie Wagner, a former employee of Food Lion, appeals the Workers' Compensation

Commission's denial of her claim for payment of medical expenses. Wagner argues that the

Commission erred in ruling that a settlement agreement barred Wagner from recovering

allegedly underpaid medical expenses that were incurred prior to the date of entry of the order

approving the parties' settlement. We agree with Wagner that the settlement agreement does not

bar her claim. Therefore, we reverse the Commission's ruling and remand the case for further

proceedings.

BACKGROUND

In March 2010, Wagner suffered a right shoulder injury while working at Food Lion.

Wagner subsequently filed a claim for benefits with the Commission. In October 2010, the

Commission issued an order granting Wagner total disability benefits and lifetime medical

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

benefits "for reasonable, necessary and authorized medical treatment" for her right shoulder injury.

In 2013, the parties sought approval of a compromise settlement of Wagner's claims. The parties submitted a petition and order, as well as an affidavit, to the Commission for their approval. On January 7, 2014, the Commission approved the parties' compromise settlement. According to the Commission's order approving the compromise settlement (the "compromise settlement order" or the "order"), the settlement "provides as follows:"

> 1) The defendants shall pay to the claimant FIFTY-FIVE THOUSAND AND 00/100 DOLLARS ($55,000.00), less approved attorney fees, in one lump sum;
>
> 2) The defendants shall pay for reasonable, necessary and related medical expenses through the date of entry of the Order approving the parties' settlement agreement.

Along with a petition and order, the Commission was also presented with an affidavit signed by Wagner. The affidavit contained the following language: "I FULLY UNDERSTAND THAT THIS SETTLEMENT FOREVER CLOSES MY CASE, INCLUDING ANY AND ALL COMPENSATION OR MEDICAL BENEFITS *EXCEPT THOSE SPECIFICALLY LISTED IN THE SETTLEMENT*." (Emphasis added).[1] The compromise settlement order made reference to this affidavit, stating that "[t]he Petition, *Affidavit*, this Order, and the Release and Resignation constitute the entire agreement between the parties related to this compromise settlement." (Emphasis added).

The order contained several statements that outlined Wagner's surrender of rights pursuant to the settlement. First, the order read:

---

[1] Though this portion of the affidavit is quoted on brief and in filings contained in the record, the full affidavit does not appear in the record submitted to this Court. We therefore rely on the quoted portion of the affidavit. Of note, this language is identical to language in the Workers' Compensation Commission's sample affidavit. *See* 15 Linda D. Slough, Virginia Practice Series: Virginia Workers' Compensation App'x A., at 418 (2012-13 ed.).

> Said settlement as set forth above shall be and hereby is a complete extinguishment and complete payment of any and all claims, of any kind or nature, which the claimant . . . might have against the defendants under the Virginia Workers' Compensation Act, including, but not limited to, claims for . . . medical expenses following the date of entry of the . . . Order.

The order also stated that the "settlement shall be a complete extinguishment of all of the claimant's rights against the defendants under the workers' compensation laws of Virginia for the compensable injury sustained by the claimant." The order added that the parties agreed that "the claimant is fully advised that upon the approval of the settlement and payment to the claimant by the defendants as set forth above, the claimant shall have no further claim of any nature for compensation or any other benefit of any kind of nature" related to the injury, under Virginia's workers' compensation laws. Finally, the order specified that the "settlement [wa]s . . . approved . . . to the end that said settlement shall be and hereby is a complete extinguishment of all claims of any nature" that Wagner might have, under the workers' compensation laws, regarding the particular injury.

In November 2022, Wagner requested a hearing, alleging that the defendants had "made only partial payments to Tidewater Orthopaedic Associates," leaving $10,315 in "reasonable, necessary and proximately related" medical expenses unpaid.[2] Wagner submitted ledgers that she stated demonstrated the deficiency. In June 2023, along with her position statement to the deputy commissioner, Wagner provided a letter signed by Ryan Henderson, Director of Operations at Tidewater Orthopaedic Associates. The letter read in full, "Please allow this letter to serve as proof that Tidewater Orthopaedic Associates is still owed a balance of $10,315 for the treatment of Ms. Wagner. This balance has been written off internally, but is still in fact owed."

---

[2] Wagner initially alleged there to be a $21,303 deficiency but later amended her claim to assert a deficiency of $10,315.

Food Lion[3] submitted a position statement requesting that the deputy commissioner deny Wagner's claim, making three primary arguments. First, Food Lion argued that by the terms of the compromise settlement, Wagner had relinquished her right to bring any further claims of any kind against Food Lion, including the claim at bar. Second, Food Lion stated that it had made payments for all "reasonable, necessary, and causally related medical treatment[s]." Food Lion attached ledgers that it said proved that Food Lion had made payment in compliance with their payment obligations. Third, Food Lion argued that because the provider letter stated that the balance had been "written off internally" and because the provider "has never filed a claim seeking additional payment," the circumstances were like the ones that supported a finding, as in this Court's unpublished *Greatheart v. City of Hampton*, No. 0689-22-1, 2023 Va. App. LEXIS 308 (May 16, 2023),[4] opinion, that no balance remains owed.

In July 2023, the deputy commissioner denied Wagner's claim. The deputy commissioner ruled that under the circumstances of this case, "no balance remains due." In support of this conclusion, the deputy commissioner noted that the provider had stated that the balance, while "still in fact owed," had been "written off internally," and found that "the medical provider has taken no action for an extended period of time to seek any additional payment for the services it rendered to the claimant for her industrial accident." The deputy commissioner concluded that pursuant to this Court's analysis in *Greatheart*, slip op. at 9-11, 2023 Va. App. LEXIS 308, at *12-14, these factors supported the denial of Wagner's claim.

Wagner then appealed to the full Commission. In February 2024, the full Commission affirmed the deputy commissioner's order "on other grounds." Without reaching the question of

___

[3] Delhaize America, Inc., was also a party to the suit. For ease of reference, this opinion refers to them jointly as Food Lion.

[4] As discussed later, we take no position on the parties' analogy to the facts in *Greatheart*.

- 4 -

the significance of the provider having "written off" the charges or whether defendants had in fact made the required payments, the Commission ruled that pursuant to the language of the order, "the claimant definitively contracted away her right to pursue any balance." The Commission cited the compromise settlement order's statements that the order "provided for the 'complete extinguishment and complete payment of any and all claims, of any kind or nature, which the claimant, and all persons claiming through the claimant, might have against the defendants'" and that "[t]his included any claim for 'past, present, and future . . . medical expenses following the date of entry of the Commission's Order.'" Wagner appealed the Commission's ruling.

ANALYSIS

Wagner argues that the Commission's decision should be reversed because the settlement agreement did not extinguish her right to bring claims for medical expenses that were incurred prior to the date of the order's entry, as those benefits were explicitly guaranteed by the settlement. Food Lion argues that the language of the settlement bars Wagner from bringing any further claims, even for prior medical expenses.[5] Alternatively, Food Lion also argues that the Commission should be affirmed because, for multiple reasons, no balance remains due in this

_____

[5] To clarify what the parties do *not* dispute, Food Lion concedes, on brief, that Wagner has standing to bring the claim under the parties' agreement. The full Commission also held that Wagner has standing.

Additionally, both parties treat the language conferring responsibility on Food Lion for "medical expenses *through* the date of entry of the Order" as referring to medical expenses that were *incurred* through the date of entry of the order. In other words, Food Lion does not suggest that the entry of the order would relieve Food Lion of its responsibility for Wagner's previously incurred medical expenses (though they do dispute whether Wagner herself, as opposed to the provider, has been barred from enforcing this duty).

A compromise settlement agreement becomes effective only when approved by the Commission's order. Code § 65.2-701(A). We therefore reject this alternative interpretation both because it was not argued by either party and because, if adopted, it would prevent the substantive rights guaranteed by the contract from ever taking legal effect. *Squire v. Va. Hous. Dev. Auth.*, 287 Va. 507, 516 (2016) (contracts are interpreted to avoid rendering provisions meaningless or mere surplusage).

case. For the reasons explained below, we hold that the Commission erred in its interpretation of the settlement agreement. We further hold that Food Lion's additional arguments depend on the resolution of factual issues not yet determined by the Commission. Therefore, we will remand the case to the Commission for further proceedings.

I. The Terms of the Parties' Compromise Settlement

## A. Standard of Review

Wagner's primary argument concerns the terms of the parties' settlement agreement. Settlement agreements "are contracts and are subject to the same rules of construction that apply to the interpretation of contracts generally." *Price v. Peek*, 72 Va. App. 640, 646 (2020) (quoting *Jones v. Gates*, 68 Va. App. 100, 105 (2017)). This Court, therefore, interprets the terms of a settlement agreement de novo. *See Gordonsville Energy v. Va. Elec. & Power*, 257 Va. 344, 352-53 (1999). Generally, this Court gives deference to the Commission's interpretation of its own orders. *Rusty's Welding Serv., Inc. v. Gibson*, 29 Va. App. 119, 130 (1999). But here, "[t]he Settlement Order memorialize[s] the final agreement of the parties, and should be interpreted in the same manner as any other contract." *Hessie Wagner v. Food Lion, LLC*, JCN VA00000241598 (Va. Workers Comp. Comm'n Apr. 1, 2024) (quoting *Hand v. Tidewater Termite & Repair*, JCN VA00000096701 (Va. Workers Comp. Comm'n Mar. 18, 2021) (Marshall, Commissioner, concurring in part and dissenting in part)). *Cf. Yourko v. Yourko*, 302 Va. 149, 153 n.1, 159 (2023) (circuit court order that "memorialized the parties' [property settlement] agreement" constituted a contract). Additionally, the compromise settlement order in this case explicitly states that it "constitute[s]" a part of the parties' "agreement." Therefore, we will review the Commission's interpretation of the parties' settlement, memorialized in the order, de novo.

B.  Rules of Contract Interpretation

In interpreting the parties' settlement agreement, this Court will apply the typical rules of contractual construction.  First, Virginia courts interpret contracts in accordance with their plain meaning when possible.  *Mgmt. Enters. v. Thorncroft Co.*, 243 Va. 469 (1992).  "In addition, 'when considering the meaning of any part of a contract, we will construe the contract as a whole.'"  *Babcock & Wilcox Co. v. Areva NP, Inc.*, 292 Va. 165, 179 (2016) (quoting *Doctors Co. v. Women's Healthcare Assocs.*, 285 Va. 566, 572-73 (2013)).  Reading a contract as a whole involves harmonizing contractual provisions with one another when "reasonably possible."  *Schuiling v. Harris*, 286 Va. 187, 193 (2013).  "[E]ach phrase and clause of [the] . . . contract should be considered and construed together and seemingly conflicting provisions harmonized . . . so as to effectuate the [expressed] intention of the parties."  *Church Mut. Ins. Co. v. Ephesus Richmond Seventh-Day Adventist Church*, 84 Va. App. 371, 386 (2025) (second and fifth alterations in original) (quoting *Copp v. Nationwide Mut. Ins.*, 279 Va. 675, 681 (2010)).  Relatedly, contracts are interpreted to avoid construing provisions as meaningless or mere surplusage.  *Squire v. Va. Hous. Dev. Auth.*, 287 Va. 507, 516 (2016).

Multiple documents executed contemporaneously can constitute a single contract.  *See Parr v. Alderwoods Grp., Inc.*, 268 Va. 461, 468 (2004) (a second contract and lease were integrated parts of a primary contract, not separate and independent contracts); *Countryside Orthopaedics, P.C. v. Peyton*, 261 Va. 142, 151 (2001) ("[W]here two papers are executed at the same time or contemporaneously between the same parties, in reference to the same subject matter, they must be regarded as parts of one transaction, and receive the same construction as if their several provisions were in one and the same instrument." (quoting *Oliver Refining Co. v. Portsmouth Cotton Oil Refining Corp.*, 109 Va. 513, 520 (1909))).  When a contract consists of multiple integrated documents, "the meaning of the contract must be gathered from all these

associated parts as the unitary expression of the parties' agreement."  Model Jury Instrs.—Civ. No. 45.300 (citing *Parr*, 268 Va. at 467).  *See also Countryside*, 261 Va. at 152 ("Where a business transaction is based upon more than one document executed by the parties, the documents will be construed together to determine the intent of the parties; each document will be employed to ascertain the meaning intended to be expressed by the others." (quoting *Daughtery v. Diment*, 238 Va. 520, 524 (1989))).

### C.  Wagner's Rights under the Settlement

Considering terms of the parties' agreement as a whole, we hold that the agreement does not bar Wagner from submitting a claim for prior medical expenses that she alleges her employer underpaid.  Instead, the agreement prohibits Wagner from bringing claims for any new benefits, including medical expenses incurred after the date of entry of the compromise settlement order.

The plain language of the affidavit signed by Wagner as a part of the parties' settlement conveys that while Wagner gave up certain rights under the agreement, she did not agree to relinquish her rights to the benefits "specifically listed in the settlement."  This meaning is made clear by the use of the term "except"; Wagner agreed that the effect of the settlement was to "forever close[] [her] case, including any and all compensation or medical benefits *except* those specifically listed in the settlement."  (Emphasis added).  *Cf. Rutledge v. Rutledge*, 45 Va. App. 56, 62 (2005) (clause featuring the word "except" was "not ambiguous").  In this case, the benefits specifically listed in the parties' compromise settlement included (1) Food Lion's lump sum payment of $55,000 and (2) Food Lion's payment of "reasonable, necessary and related medical expenses through the date of entry of the Order approving the parties' settlement agreement."  The affidavit, thus, makes clear that Wagner did agree to "close her case" or relinquish her rights to receive certain benefits: the lump sum and medical expenses through the date of the order.

Wagner's affidavit is a part of the binding contract between the parties in this case. First, the compromise settlement order explicitly incorporated the affidavit into the parties' contract. The compromise settlement order stated that "[t]he Petition, *Affidavit*, this Order, and the Release and Resignation *constitute the entire agreement* between the parties related to this compromise settlement." (Emphasis added). This is unambiguous language of integration. *See Collelo v. Geographic Servs.*, 283 Va. 56, 62, 76 (2012) (where a contract stated, "[t]his Agreement and any Addenda hereto, constitute the entire agreement," the Court said, "[t]he contract in this case was made up of three documents:" the Agreement and two addenda (first alteration in original)).

Several additional factors support treating the affidavit as a part of a single contract along with the order: the affidavit was known to all parties at the time of the order, it was submitted with the petition and order for a singular purpose, and, under Workers' Compensation Commission Rule 1.7, it was required to be submitted to the Commission in order for the parties' agreement to be effective. *See* 15 Linda D. Slough, Virginia Practice Series: Virginia Workers' Compensation App'x A., at 399 (2012-13 ed.) ("All documents must be sent together."); *Countryside*, 261 Va. at 152-53 (holding that documents constituted parts of the same contract where the documents contained cross-references to one another, were known to all parties at the time of signing, were executed "at the same time as part of a single transaction to accomplish an agreed purpose," and "had to be signed together or there would not have been a deal"). The fact that only Wagner's signature on the affidavit was required is not dispositive. *See Countryside*, 261 Va. at 152-53 (integrated documents were not signed by all members of the transaction). Thus, because of the explicit integration language and because of the other factors indicating the parties' intent, the affidavit, the petition, and the order "should be regarded as 'parts of one transaction' and construed as 'one and the same instrument.'" *Id.* at 152 (quoting *Oliver Refining Co.*, 109 Va. at 520).

Reading the terms of the contract as a whole, we conclude that the parties' agreement did not bar Wagner from bringing a claim to enforce her employer's payment for medical expenses incurred prior to the date of the settlement. Food Lion's interpretation would require reading the settlement documents in disharmony with one another. As discussed, the affidavit clearly distinguishes between Wagner's right to have her employer pay her prior medical expenses, which was preserved, and the right to have her future medical expenses paid, which Wagner waived. Under Food Lion's reading, Wagner simultaneously signed a compromise settlement order that waived an additional right: the right to enforce Food Lion's promise to pay the prior medical expenses. This would mean that Wagner signed one document that explicitly waived one set of substantive rights while explicitly preserving another—and simultaneously signed a separate document waiving her procedural right to enforce her remaining substantive rights.

This interpretation is not the best reading of the parties' contract. The affidavit conveys Wagner's understanding of the effect of the compromise settlement on her rights. *See* Workers' Comp. Comm'n Rule 1.7 (requirement to file an affidavit "attesting the claimant's understanding of and voluntary compliance with the terms of the settlement"). Given that role, reading the affidavit and compromise settlement order to provide for the waiver of separate rights would be a disharmonious reading of the documents.

Conversely, no clash in provisions follows if we read the parties' contract to waive Wagner's rights to pursue claims for benefits *except for* those specific benefits explicitly guaranteed by the settlement agreement: the lump sum and payment for prior medical expenses. This reading gives meaning to the order's affirmative grant of rights to receive payments as well as its waiver provision. It also gives meaning to the affidavit's explicit savings clause. Thus, to harmonize the terms of the various documents constituting the parties' contract, we read the

contract's waiver language as inapplicable to the benefits guaranteed by the settlement itself. *See Harris*, 286 Va. at 193; *Countryside*, 261 Va. at 152-53.[6]

Food Lion makes one additional argument concerning the settlement agreement: it argues that even though Wagner could sue if Food Lion had made no payment at all towards the prior medical expenses, Wagner cannot sue for allegedly *underpaid* prior medical expenses. Food Lion says, "[t]o the extent that defendants had not processed and paid the bills at issue, the claimant could certainly seek to enforce the settlement Order to have the carrier process payment for any reasonable, necessary and causally related treatment." It then introduces a distinction: "Here, however, the carrier did process and pay the bills for all dates of service. To now file a new medical fee dispute *contesting sufficiency of payment* is not simply seeking to *enforce* the settlement Order. This is a *new claim* in contravention of other terms of the settlement agreement." (Emphases added).

We are not persuaded by Food Lion's argument. If a compromise settlement preserves an employee's right to have her employer pay a first category of expenses, and, in exchange, waives the employee's right to seek payment for a second category of expenses, then the employee has retained the right to receive *full* payment for the first category.[7]

Taken to its logical conclusion, Food Lion's position would mean that if an employer paid $100 for medical expenses despite having been obligated to pay $10,000, then under this

---

[6] We note that our reading of the contract as introducing a substantive exchange of rights and responsibilities is consistent with the conclusion we have reached in a claim featuring a provider's claim for benefits given similar language. See *Northrop Grumman Shipbuilding, Inc. v. Wardell Orthopaedics, P.C.*, 67 Va. App. 420, 430 (2017) ("[C]laimant agreed to abandon his Virginia Workers' Compensation claim . . . which provided an obvious benefit to employer" while "employer is no longer financially responsible for claimant's future medical treatments.").

[7] Of course, what constitutes full payment in the Workers' Compensation context is limited by the medical payment provisions under the Virginia Workers' Compensation Act. To prevail on the merits, Wagner would have to prove her case in terms of those requirements.

contract, the day after the order was entered, the employee would have no right to sue the employer to correct the underpayment. The contract does not suggest such a rule, and we will not adopt it. A more reasonable reading of the agreement's terms is that Wagner preserved her right to have her previously incurred medical expenses paid, subject to the specific limitations under the Workers' Compensation Act, but waived her right to sue for medical expenses incurred later on.

II. Harmless Error Analysis

Food Lion argues that regardless of the contractual issue, this Court should affirm the Commission's decision because no balance remains due in this case. First, Food Lion argues that the contents of the provider letter and other circumstances of this case support the deputy commissioner's finding that no balance remains due in this case. In other words, Food Lion urges this Court to affirm on the basis of the finding reached by the deputy commissioner. Second, Food Lion argues that its ledger evidence shows that it did pay the required amounts to the provider under the specific requirements of the Virginia Workers' Compensation Act. We hold that both of Food Lion's arguments implicate factual questions that we do not have the authority or ability to decide on appeal.

This Court will not reverse if an error was harmless to the outcome of the case. *See* Code § 8.01-678. *See also K & G Abatement Co. v. Keil*, 38 Va. App. 744, 755 (2002) (applying harmless error review to a decision of the Commission). However, there are prerequisites to this Court reaching a determination on appeal from the Workers' Compensation Commission. *See Goodyear Tire & Rubber Co. v. Pierce*, 5 Va. App. 374, 384 (1987) (On appeal to this Court from the full Commission, "we must have an adequate 'statement of the findings of fact, rulings of law and other matters pertinent to the questions at issue' for a proper review." (quoting Code § 65.1-97 (1968) (recodified as Code § 65.2-706))). Specifically, this Court has no authority to

resolve cases on the basis of a factual issue not determined by the full Commission, even if a deputy commissioner previously resolved the factual issue. *See Lanning v. Va. Dep't of Transp.*, 37 Va. App. 701, 709 (2002) ("In order for us to review a decision of the [C]ommission, the [C]ommission must make a finding, even if the deputy commissioner previously made a factual ruling."). *Cf. Hess v. Va. State Police*, 68 Va. App. 190, 194 n.1 (2017) (a deputy commissioner's finding is not binding on the full Commission).

Here, factual issues that are key to Food Lion's arguments were not determined by the full Commission. Unlike in *Greatheart*, which involved nearly identical contractual provisions, in this case, the full Commission affirmed the denial of Wagner's claim on different grounds from the deputy commissioner and made no factual finding regarding whether a debt remains due. *See Greatheart*, slip op. at 9, 2023 Va. App. LEXIS 308, at *12 ("We need not resolve these competing (and arguably conflicting) terms, because we can decide the case on narrower grounds."). Additionally, the full Commission in this case made no finding regarding the sufficiency of payments shown by the parties' ledger evidence. For these reasons, we cannot resolve this case on the basis of whether a balance remains due. *See Lanning*, 37 Va. App. at 709.

Thus, this Court will remand the case to the full Commission for further proceedings, so that the Commission may make such factual determinations as necessary to resolve the parties' dispute. This Court takes no position on the factual issues pertinent to the remand, which we are unauthorized to resolved.

CONCLUSION

For the foregoing reasons, we reverse and remand for further proceedings consistent with this opinion.

*Reversed and remanded.*

- 13 -