Present:  All the Justices

THE AES CORPORATION
                                        OPINION BY
v.  Record No. 100764          JUSTICE S. BERNARD GOODWYN
                                     April 20, 2012[1]
STEADFAST INSURANCE COMPANY


             FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                   Benjamin N.A. Kendrick, Judge

     In this appeal from a judgment in a declaratory judgment

action, we consider whether the circuit court erred in ruling

that a civil complaint filed against The AES Corporation (AES)

did not allege an "occurrence" as that term is defined in AES's

contracts of insurance with Steadfast Insurance Company

(Steadfast), and that Steadfast, therefore, did not owe AES a

defense or liability coverage.

                            Background

     AES is a Virginia-based energy company that holds

controlling interests in companies specializing in the

generation and distribution of electricity in numerous states,

including California.  Steadfast is an Illinois-based company

and indirect subsidiary of Zurich Financial Services, a global

insurance provider.  AES paid premiums to Steadfast for

_____

     [1] The prior opinion rendered September 16, 2011, reported
at 282 Va. 252, 715 S.E.2d 28 (2011), was set aside and thus
withdrawn by the Court after a petition for rehearing was
granted by Order of the Court dated January 17, 2012.

commercial general liability (CGL) policies from 1996 to 2000 and 2003 to 2008.

In February 2008, the Native Village of Kivalina and City of Kivalina (Kivalina), a native community located on an Alaskan barrier island, filed a lawsuit (the Complaint) in the United States District Court for the Northern District of California against AES and numerous other defendants for allegedly damaging the village by causing global warming through emission of greenhouse gases.  See Native Vill. of Kivalina v. ExxonMobil Corp., 663 F.Supp.2d 863 (N.D. Cal. 2009).  AES requested Steadfast provide a defense and insurance coverage, pursuant to the terms of the CGL policies, for the claims alleged in the Complaint.  Steadfast provided AES a defense under a reservation of rights and filed a declaratory judgment action, which is the subject of this appeal, in the Circuit Court of Arlington County.

In the declaratory judgment action, Steadfast claimed that it did not owe AES a defense or indemnity coverage for damage allegedly caused by AES's contribution to global warming based on three grounds:  (1) the Complaint did not allege "property damage" caused by an "occurrence," which was necessary for there to be coverage under the policies; (2) any alleged injury arose prior to the inception of Steadfast's coverage; and (3)

2

the claims alleged in the Complaint fell within the scope of the pollution exclusion stated in AES's policies.

The parties subsequently filed cross-motions for summary judgment, both claiming that whether Steadfast had a duty to defend AES against the Complaint could be decided by examining the "eight corners" of the Complaint and the CGL policies. The circuit court denied AES's motion for summary judgment and granted Steadfast's motion for summary judgment, holding that the Complaint does not allege an "occurrence" as that term is defined in the CGL policies, and thus, the allegations in the Complaint are not covered under those policies.

## The Insurance Policies

In each of the CGL policies AES purchased from Steadfast, Steadfast agreed to defend AES against suits claiming damages for bodily injury or property damage, if such damage "is caused by an 'occurrence.' " The policies define "occurrence" as follows: " 'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful condition." The policies specify that Steadfast has no duty to defend or indemnify AES against damage suits to which the policies do not apply.

## The Complaint

Kivalina is located on the tip of a small barrier reef on the northwest coast of Alaska, approximately seventy miles

3

north of the Arctic Circle.  As pertinent to this appeal, in the Complaint, Kivalina alleges that AES engaged in energy-generating activities using fossil fuels that emit carbon dioxide and other greenhouse gases, and that the emissions contributed to global warming, causing land-fast sea ice protecting the village's shoreline to form later or melt earlier in the annual cycle.  This allegedly exposed the shoreline to storm surges, resulting in erosion of the shoreline and rendering the village uninhabitable.

The Complaint alleges that AES "<u>intentionally</u> emits millions of tons of carbon dioxide and other greenhouse gases into the atmosphere annually."  (Emphasis added.)  The Complaint further alleges that AES "<u>knew or should have known</u> of the impacts of [its] emissions" of carbon dioxide, but that "[d]espite this knowledge" of the "impacts of [its] emissions on global warming and on particularly vulnerable communities such as coastal Alaskan villages," AES "continued [its] substantial contributions to global warming."  (Emphasis added.)  Kivalina then dedicates sixteen pages and sixty-six paragraphs of its sixty-nine page Complaint to explaining global warming.

The Complaint alleges a civil conspiracy by power, coal and oil companies to mislead the public about the science of global warming.  It states that "[d]espite the attempts by

4

certain defendants to make the cause of climate change controversial in the popular media, there has been for many years an overwhelming scientific consensus that human activity that releases greenhouse gases is causing a change in the Earth's climate." The Complaint alleges that there is "a clear scientific consensus that global warming is caused by emissions of greenhouse gases, primarily carbon dioxide from fossil fuel combustion and methane releases from fossil fuel harvesting."

The Complaint recounts published articles, books and testimony in which scientists have confirmed the existence of global warming, and discusses current and projected global warming impacts, stating that "[e]mpirical evidence underlies the scientific consensus that global warming has arrived." It then discusses the special injuries to Kivalina's property interests allegedly resulting from global warming.

The Complaint then states three claims for relief against AES. Two causes of action are for nuisance and the other is for concert of action. The first claim for relief is entitled "Federal Common Law: Public Nuisance." In support of its claims for federal common law public nuisance, Kivalina asserts the following:

> 251. Defendants' greenhouse gas emissions are a direct and proximate contributing cause of global warming and of the injuries and threatened injuries Plaintiffs suffer.

5

252. Defendants know or should know that their emissions of greenhouse gases contribute to global warming, to the general public injuries such heating will cause, and to Plaintiffs' special injuries. Intentionally or negligently, defendants have created, contributed to, and/or maintained the public nuisance.

253. Defendants, both individually and collectively, are substantial contributors to global warming and to the injuries and threatened injuries Plaintiffs suffer.

. . . .

255. Defendants knew that their individual greenhouse gas emissions were, in combination with emissions and conduct of others, contributing to global warming and causing injuries to entities such as the Plaintiffs.

. . . .

261. Defendants are jointly and severally liable to Kivalina under the federal common law of public nuisance.

The second claim for relief asserted against AES is entitled "State Law: Private and Public Nuisance." Kivalina asserts as follows:

264. Defendants' emissions of carbon dioxide, by contributing to global warming, constitute a substantial and unreasonable interference with public rights, including, inter alia, the rights to use and enjoy public and private property in Kivalina. . . .

265. Defendants have engaged and continue to engage in intentional or negligent acts or omissions that unreasonably interfere with the use and enjoyment of Plaintiffs' properties, and/or work a substantial annoyance, inconvenience, or injury to the public, and are therefore liable under the applicable state statutory and/or common law of private and public nuisance.

6

266. Defendants, individually and collectively, are substantial contributors to global warming and to the injuries and threatened injuries suffered by Plaintiffs. . . .

267. Defendants are jointly and severally liable to Plaintiffs under the applicable state statutory and/or common law of private and public nuisance.

The other claim for relief against AES is entitled "Concert of Action." Kivalina alleges that the "[d]efendants have engaged in and/or are engaging in tortious acts in concert with each other or pursuant to a common design" in creating, contributing to and/or maintaining a public nuisance, specifically, global warming.

## Analysis

We awarded AES an appeal on the following assignment of error:

The trial court erred in summarily ruling that the underlying complaint did not allege an "occurrence" covered by the insurance policies.

Both AES and Steadfast agree that it is a well-established principle, consistently applied in this Commonwealth, that only the allegations in the complaint and the provisions of the insurance policy are to be considered in deciding whether there is a duty on the part of the insurer to defend and indemnify the insured. See Brenner v. Lawyers Title Ins. Corp., 240 Va. 185, 189, 192, 397 S.E.2d 100, 102, 104 (1990); Reisen v. Aetna

7

Life & Cas. Co., 225 Va. 327, 331, 302 S.E.2d 529, 531 (1983); Travelers Indem. Co. v. Obenshain, 219 Va. 44, 46, 245 S.E.2d 247, 249 (1978); Norman v. Ins. Co. of N. Am., 218 Va. 718, 724, 239 S.E.2d 902, 905-06 (1978); London Guar. & Accident Co. v. C. B. White & Bros., Inc., 188 Va. 195, 199-200, 49 S.E.2d 254, 256 (1948); see also Town Crier, Inc. v. Hume, 721 F.Supp. 99, 102 n.12 (E.D. Va. 1989) ("an insurer's duty to defend is determined solely by the allegations in the pleadings"); American & Foreign Ins. Co. v. Church Schs. in the Diocese of Virginia, 645 F.Supp. 628, 631 n.1 (E.D. Va. 1986).  This principle is commonly known as the "eight corners rule" because the determination is made by comparing the "four corners" of the underlying complaint with the "four corners" of the policy, to determine whether the allegations in the underlying complaint come within the coverage provided by the policy.  See Copp v. Nationwide Mut. Ins. Co., 279 Va. 675, 682-83, 692 S.E.2d 220, 224 (2010); America Online, Inc. v. St. Paul Mercury Ins. Co., 207 F.Supp.2d 459, 465-66 (E.D. Va. 2002).

"[A]n insurer's duty to defend . . . is broader than [the] obligation to pay, and arises whenever the complaint alleges facts and circumstances, some of which would, if proved, fall within the risk covered by the policy."  Virginia Elec. & Power Co. v. Northbrook Prop. & Cas. Ins. Co., 252 Va. 265, 268-69, 475 S.E.2d 264, 265-66 (1996) (internal quotation marks and

8

citation omitted); see also Copp, 279 Va. at 682, 692 S.E.2d at 224. On the other hand, if it appears clearly that the insurer would not be liable under its contract for any judgment based upon the allegations, it has no duty even to defend. Travelers Indem. Co., 219 Va. at 46, 245 S.E.2d at 249.

The relevant policies provide coverage for damage resulting from an "occurrence," and define an occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful condition." The terms "occurrence" and "accident" are "synonymous and . . . refer to an incident that was unexpected from the viewpoint of the insured." Utica Mut. Ins. Co. v. Travelers Indem. Co., 223 Va. 145, 147, 286 S.E.2d 225, 226 (1982). We have held that an "accident" is commonly understood to mean "an event which creates an effect which is not the natural or probable consequence of the means employed and is not intended, designed, or reasonably anticipated." Lynchburg Foundry Co. v. Irvin, 178 Va. 265, 271, 16 S.E.2d 646, 648 (1941). An accidental injury is one that "happen[s] by chance, or unexpectedly; taking place not according to the usual course of things; casual; fortuitous." Fidelity & Guar. Ins. Underwriters, Inc. v. Allied Realty Co., 238 Va. 458, 462, 384 S.E.2d 613, 615 (1989) (internal quotation marks omitted).

Kivalina alleges that AES intentionally released tons of carbon dioxide and greenhouse gases into the atmosphere as part of its electricity-generating operations.  We have held that "[a]n intentional act is neither an 'occurrence' nor an 'accident' and therefore is not covered by the standard policy."  Utica Mut., 223 Va. at 147, 286 S.E.2d at 226; see Reisen, 225 Va. at 331-32, 302 S.E.2d at 531 (duty to defend excused when insured's act of intentionally striking plaintiff fell within exclusion in policy); Travelers Indem. Co., 219 Va. at 47, 245 S.E.2d at 249 (insurer had no duty to defend where a complaint alleged only intentional torts).  If a result is the natural or probable consequence of an insured's intentional act, it is not an accident.  See Resource Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 637 (4th Cir. 2005).

However, even though the insured's action starting the chain of events was intentionally performed, when the alleged injury results from an unforeseen cause that is out of the ordinary expectations of a reasonable person, the injury may be covered by an occurrence policy provision.  20 Eric M. Holmes, Appleman on Insurance 2d § 129.2(I)(5) (2002 & Supp. 2009).  In such a context, the dispositive issue in determining whether an accidental injury occurred is not whether the action undertaken by the insured was intended, but rather whether the resulting harm is alleged to have been reasonably anticipated or the

10

natural or probable consequence of the insured's intentional act.  See id.; see also Fidelity & Guar. Ins., 238 Va. at 462, 384 S.E.2d at 615.  For coverage to be precluded under a CGL policy because there was no occurrence, it must be alleged that the result of an insured's intentional act was more than a possibility; it must be alleged that the insured subjectively intended or anticipated the result of its intentional act or that objectively, the result was a natural or probable consequence of the intentional act.  Thus, resolution of the issue of whether Kivalina's Complaint alleges an occurrence covered by the policies turns on whether the Complaint can be construed as alleging that Kivalina's injuries, at least in the alternative, resulted from unforeseen consequences that were not natural or probable consequences of AES's deliberate act of emitting carbon dioxide and greenhouse gases.

AES notes that the Complaint alleges that AES "[i]ntentionally or negligently" created the nuisance, global warming, and that the defendants' concerted action in causing the nuisance "constitutes a breach of duty."  (Emphasis added.) AES maintains that this language shows that Kivalina alleged in the Complaint both intentional and negligent tortious acts. Citing Parker v. Hartford Fire Ins. Co., 222 Va. 33, 278 S.E.2d 803 (1981), AES asserts that an insured is entitled to a defense when negligence is alleged.

11

AES further asserts that because the Complaint alleges that AES "knew or should know" that its activities in generating electricity would result in the environmental harm suffered by Kivalina, Kivalina alleges, at least in the alternative, that the consequences of AES's intentional carbon dioxide and greenhouse gas emissions were unintended. AES reasons that the damage alleged by Kivalina is therefore accidental from the viewpoint of AES and within the definition of an "occurrence" under the CGL policies. In essence, AES argues that the damage to the village resulting from global warming caused by AES's electricity-generating activities was accidental because such damage may have been unintentional.

We disagree with AES. Applying the "eight corners" rule, we must consider the terms of the relevant insurance policies and the allegations in the Complaint. Unlike the policy at issue in Parker,[2] the instant policies do not provide coverage or a defense for all suits against the insured alleging damages not caused intentionally. Likewise, the policies in this case do not provide coverage for all damage resulting from AES's negligent acts. The relevant policies only require Steadfast

---

[2] In Parker, the relevant policy, while excluding coverage for bodily injury or property damage caused intentionally, otherwise required the insurer to defend any suit against the insured alleging bodily injury or property damage. 222 Va. at 34, 278 S.E.2d at 803.

to defend AES against claims for damages for bodily injury or property damage caused by an occurrence or accident.

In the Complaint, Kivalina plainly alleges that AES intentionally released carbon dioxide into the atmosphere as a regular part of its energy-producing activities. Kivalina also alleges that there is a clear scientific consensus that the natural and probable consequence of such emissions is global warming and damages such as Kivalina suffered. Whether or not AES's intentional act constitutes negligence, the natural or probable consequence of that intentional act is not an accident under Virginia law.

Kivalina alleges that AES knew or should have known the damage that its activities would cause, that AES was negligent if it did not know, and that AES was negligent in acting in concert with other defendants in creating a nuisance.

However, allegations of negligence are not synonymous with allegations of an accident. See Nationwide Mut. Fire Ins. Co. v. Overstreet, 568 F.Supp.2d 638, 651-52 (E.D. Va. 2008) (mere use of the word negligence does not compel a court to find that a claim was based on an "occurrence" under Virginia law); 16 Holmes, Appleman on Insurance 2d § 116.4 (accident and negligence are not synonymous and not all negligent acts support a claim of accident). In this instance, the allegations of negligence do not support a claim of an

accident. Even if AES were negligent and did not intend to

cause the damage that occurred, the gravamen of Kivalina's

nuisance claim is that the damages it sustained were the

natural and probable consequences of AES's intentional

emissions.

The dissimilarity between the allegations in the <u>Kivalina</u>

complaint and those in most other tort actions for bodily

injury or property damage is the relevant intentional or

negligent act alleged in the complaint. Kivalina does not

allege that AES's intentional acts were done negligently.[3] The

complaint alleges that AES was "negligent" only in the sense

that it "knew or should have known" that its actions would

cause injury no matter how they were performed.

---

[3] Accident and negligence are not mutually exclusive in most instances. See <u>Fidelity & Guar. Ins.</u>, 238 Va. at 461, 384 S.E.2d at 615 ("A loss resulting in part from an insured's negligence, however, may still come within the definition of a fortuitous loss."). To prevail in an action for negligence, a plaintiff must prove the existence of a legal duty, a breach of the duty, and that the breach of the duty proximately caused his injury. <u>E.g.</u>, <u>Atrium Unit Owners Ass'n v. King</u>, 266 Va. 288, 293, 585 S.E.2d 545, 548 (2003). For a breach of a legal duty to proximately cause the plaintiff's injury, the injury must be the "natural and probable consequence" of the <u>breach</u>. <u>Scott v. Simms</u>, 188 Va. 808, 817, 51 S.E.2d 250, 253 (1949). In many instances the breach is the manner in which the act was done rather than the doing of the act. What one alleges constituted the breach is key in discerning whether there is negligence that led to an accident in a particular instance. Hypothetical examples unfettered by the eight corners rule are not instructive concerning whether insurance coverage should or would be provided in a given situation.

Under the CGL policies, Steadfast would not be liable because AES's acts as alleged in the complaint were intentional and the consequences of those acts are alleged by Kivalina to be not merely foreseeable, but natural or probable. Where the harmful consequences of an act are alleged to have been not just possible, but the natural or probable consequences of an intentional act, choosing to perform the act deliberately, even if in ignorance of that fact, does not make the resulting injury an "accident" even when the complaint alleges that such action was negligent.

Kivalina asserts that the deleterious results of emitting carbon dioxide and greenhouse gases are something that AES knew or should have known about. If an insured knew or should have known that certain results were the natural or probable consequences of intentional acts or omissions, there is no "occurrence" within the meaning of a CGL policy. See 1 Barry R. Ostrager & Thomas R. Newman, Handbook on Insurance Coverage Disputes § 8.03[c] (15th ed. 2011) (citing City of Carter Lake v. Aetna Cas. & Sur. Co., 604 F.2d 1052, 1058-59 (8th Cir. 1979)); 20 Holmes, Appleman on Insurance 2d § 129(I)(5). Even if AES were actually ignorant of the effect of its actions and/or did not intend for such damages to occur, Kivalina alleges its damages were the natural and probable consequence of AES's intentional actions. Therefore, Kivalina does not

15

allege that its property damage was the result of a fortuitous event or accident, and such loss is not covered under the relevant CGL policies.

## Conclusion

For these reasons, we will affirm the judgment of the circuit court.

<u>Affirmed</u>.

JUSTICE MIMS, concurring.

I write separately because I believe the result reached in this case is dictated by our precedents but I disagree with the majority opinion that the reasoning can be limited to the four corners of the commercial general liability insurance ("CGL") policies or the allegations of the complaint at issue here. Our jurisprudence, developed over more than a century, is leading inexorably to a day of reckoning that may surprise many policy holders.

The majority opinion observes both that the CGL policies cover damage resulting from an "occurrence," which is synonymous with "accident," and that we have defined accident in various ways. For example, an accident means "an incident that was unexpected from the viewpoint of the insured," <u>Utica Mutual Insurance Co. v. Travelers Indemnity Co.</u>, 223 Va. 145, 147, 286 S.E.2d 225, 226 (1982), and "an event which creates an effect which is not the natural or probable consequence of the

means employed and is not intended, designed, or reasonably anticipated." Lynchburg Foundry Co. v. Irvin, 178 Va. 265, 271, 16 S.E.2d 646, 648 (1941).

But this creates a dichotomy. If the injurious consequence of an action is not the natural or probable consequence of the action, there can be no actionable negligence. To prevail in an action for negligence, a plaintiff must prove the existence of a legal duty, a breach of the duty, and that the breach of the duty proximately caused his injury. Atrium Unit Owners Ass'n v. King, 266 Va. 288, 293, 585 S.E.2d 545, 548 (2003). For a breach of legal duty to proximately cause the plaintiff's injury, the injury must be "the natural and probable consequence" of the breach. Scott v. Simms, 188 Va. 808, 817, 51 S.E.2d 250, 253 (1949); see also Jordan v. Jordan, 220 Va. 160, 162, 257 S.E.2d 761, 762 (1979) ("To constitute actionable negligence, there must be a legal duty, a breach thereof, and a consequent injury which could have been reasonably foreseen by the exercise of reasonable care and prudence." (Emphasis added)).

Thus the majority opinion is only half right when it states that "allegations of negligence are not synonymous with allegations of an accident." In fact, under the reasoning of our precedents, allegations of negligence and allegations of accident must be mutually exclusive. The dichotomy is

17

longstanding, appearing in a venerable 140-year-old definition of accident in which we said, "By the term accident is included not merely inevitable casualty or the act of Providence, or what is technically called vis major or irresistible force, but such unforeseen events, misfortunes, losses, acts or omissions as are not the result of any negligence or misconduct in the party." Byrne v. Edmonds, 64 Va. (23 Gratt.) 200, 210 (1873) (final emphasis added).

Because "accident" is synonymous with "occurrence," which is what these CGL policies cover, I concur with the majority that our precedents require us to conclude that they do not provide coverage for AES's allegedly negligent acts. However, there is no rationale to distinguish these policies from other CGL policies in which the insured risk is defined as an "occurrence."[1] An "occurrence," is "[t]he fundamental event covered by the vast majority [of CGL] policies." Paul E.B.

---

[1] This case is distinguishable from Parker v. Hartford Fire Insurance Co., 222 Va. 33, 278 S.E.2d 803 (1981), not because of a dissimilarity between the insurance policies but because of the dissimilarity between the causes of action. The tortious act in that case was a trespass. Id. at 35, 278 S.E.2d at 804. One may commit actionable trespass without intention or negligence because "[n]either wilfulness nor negligence is necessary to make a trespass on real estate a tort." Chesapeake & O. Ry. Co. v. Greaver, 110 Va. 350, 355, 66 S.E. 59, 60 (1909). Trespass therefore is essentially a strict liability offense, unlike the actions at issue in this case, and a complaint for trespass need not allege any foreseeability, expectation, or anticipation of injury by the defendant.

Glad, William T. Barker & Michael Barnes, Nature of General Liability Coverage, in 3 New Appleman on Insurance Law Library Edition § 16.07[3][a] (Jeffrey E. Thomas ed., 2011).

Accordingly, while I agree with my colleagues that Steadfast had no duty to defend AES in the underlying action based on the CGL policies in this case, I also must acknowledge the broader effect that this conclusion, and the underlying case law that compels it, may have on other CGL policies in which the insured risk is defined as an "occurrence."[2] Our precedents may have painted us into a jurisprudential corner.

---

[2] Because this case involves only a commercial general liability insurance policy, the question of whether the words "occurrence" and "accident" exclude liability for negligent acts in other contexts, such as automobile or homeowners' insurance policies, is not before the Court today. However, the words "accident" and "occurrence" may have different meanings in those contexts. See Paul E.B. Glad, William T. Barker & Michael Barnes, Types of Liability Coverage, in 3 New Appleman on Insurance Law Library Edition § 16.02[3][f] (Jeffrey E. Thomas ed., 2011); Peter M. Lencsis, Scope: Homeowners Liability Insurance, in 2 New Appleman Law of Liability Insurance § 13.01 (2011).