**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 11-1781**

─────────────

FIRST TENNESSEE BANK NATIONAL ASSOCIATION,

        Intervenor/Plaintiff - Appellant,

    and

GLOBAL TITLE, LLC,

        Third Party Plaintiff,

      v.

ST. PAUL FIRE AND MARINE INSURANCE COMPANY,

        Third Party Defendant – Appellee.

─────────────

**No. 11-1782**

─────────────

GLOBAL TITLE, LLC,

        Third Party Plaintiff – Appellant,

    and

FIRST TENNESSEE BANK NATIONAL ASSOCIATION,

        Intervenor/Plaintiff,

      v.

ST. PAUL FIRE AND MARINE INSURANCE COMPANY,

        Third Party Defendant - Appellee.

─────────────

Appeals from the United States District Court for the Eastern District of Virginia, at Richmond. Henry E. Hudson, District Judge. (3:09-cv-00550-HEH-MHL)

————————

Argued: September 18, 2012            Decided: December 21, 2012

————————

Before TRAXLER, Chief Judge, and DIAZ and THACKER, Circuit Judges.

————————

Vacated and remanded by unpublished per curiam opinion.

————————

**ARGUED:** Paul Peter Vangellow, Falls Church, Virginia; Clarence A. Wilbon, BASS, BERRY & SIMS PLC, Memphis, Tennessee, for Appellants. Christopher J. Bannon, ARONBERG GOLDGEHN DAVIS & GARMISA, Chicago, Illinois, for Appellee. **ON BRIEF:** Annie T. Christoff, BASS, BERRY & SIMS PLC, Memphis, Tennessee; Michael P. Falzone, HIRSCHLER FLEISCHER, Richmond, Virginia, for Appellant First Tennessee Bank National Association. Bruin S. Richardson, LECLAIRRYAN, Richmond, Virginia, for Appellee.

————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Global Title, LLC, served as the closing agent for mortgage loans originated by Financial Mortgage, Inc. ("FMI"), and funded by First Tennessee National Bank. After learning that three scheduled loans would not close, Global returned the unused funds to FMI instead of First Tennessee. FMI's president absconded with the funds. Unable to recover the funds from FMI, First Tennessee sued Global. Global sought coverage under a liability policy issued by St. Paul Fire & Marine Insurance Company. St. Paul determined that coverage was barred by a policy exclusion and denied the claim, which prompted Global to sue St. Paul for breach of contract. After a bit of procedural shuffling and realigning, the case proceeded with Global as plaintiff asserting claims against St. Paul; First Tennessee intervened to assert its claim against Global.

The district court granted summary judgment in favor of St. Paul, concluding that coverage was excluded under the policy and that St. Paul therefore had no duty to defend or indemnify Global. Global and First Tennessee appeal. We agree with Appellants that there is a possibility of coverage under the policy and that St. Paul therefore is obligated to defend Global against First Tennessee's claims. Accordingly, we vacate the district court's order and remand.

I.

The central question in this case is whether St. Paul is obligated under the policy to defend Global in the action brought against Global by First Tennessee. Under Virginia law,[1] an insurer's duty to defend its insured is broader than its duty to indemnify. "Indeed, an insurer may be required to provide a defense even where the ultimate resolution of the case demonstrates that the insurer is not liable for indemnification." Fuisz v. Selective Ins. Co. of Am., 61 F.3d 238, 242 (4th Cir. 1995).

The duty to defend "arises whenever the complaint alleges facts and circumstances, some of which would, if proved, fall within the risk covered by the policy." Virginia Elec. & Power Co. v. Northbrook Prop. & Cas. Ins. Co., 475 S.E.2d 264, 265 (Va. 1996) (internal quotation marks omitted). Conversely, an insurer has no duty to defend if the insurer "would not be liable under its contract for any judgment based upon the allegations." Travelers Indemn. Co. v. Obenshain, 245 S.E.2d 247, 249 (Va. 1978); see Virginia Elec. & Power, 475 S.E.2d at

---

[1] The parties agree that Virginia law governs the disposition of this appeal. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941) (federal court sitting in diversity must apply the choice-of-law rules of the forum state); Buchanan v. Doe, 431 S.E.2d 289, 291 (Va. 1993) (Virginia law governs dispute over insurance policy issued and delivered in Virginia).

266-67 (insurer has no duty to defend the insured against claim clearly excluded from coverage under the policy).

Resolution of the duty-to-defend question thus "requires examination of (1) the policy language to ascertain the terms of the coverage and (2) the underlying complaint to determine whether any claims alleged therein are covered by the policy." Fuisz, 61 F.3d at 242. "This principle is commonly known as the 'eight corners rule' because the determination is made by comparing the 'four corners' of the underlying complaint with the 'four corners' of the policy . . . ." AES Corp. v. Steadfast Ins. Co., 725 S.E.2d 532, 535 (Va. 2012). With these principles in mind, we turn now to the specifics of this case.

A.

The policy's general insuring clause provides coverage to "protected persons" for loss caused by "wrongful acts" committed during the performance of or failure to perform "real estate professional services," including services performed in the capacity of title, closing, or escrow agent. Policy at SP00021. The policy defines "wrongful act" as "any negligent act, error or omission." Id. at SP00022.

The policy exclusion at issue in this case is the "Handling of funds" exclusion (the "HOF Exclusion"). The HOF Exclusion, in relevant part, excludes from coverage claims for loss resulting from "[a]ny unauthorized act committed by any

5

protected person that deprives an owner of the use of its funds." Policy at SP00028 (emphasis added). The policy does not define "unauthorized" or "unauthorized act."

B.

The amended complaint filed by First Tennessee (as intervening plaintiff) asserted a single count of negligence against Global.[2] According to the allegations of the complaint, First Tennessee entered into an agreement with FMI and established a line of credit through which First Tennessee provided the funds for mortgage loans originated by FMI. The complaint alleged that Global, as closing agent, "would receive funds from First Tennessee prior to the closing of the [FMI]-originated loans. Global Title was to hold the funds in trust and then distribute the funds as directed upon closing." J.A. 33. In anticipation of funding three loans, First Tennessee wired a total of approximately $2.5 million to Global. The complaint alleged that when Global later learned from FMI that the transactions had been cancelled, "[i]nstead of returning the

---

[2] We focus on the allegations of First Tennessee's amended complaint-in-intervention rather than First Tennessee's original, multi-count complaint. The original complaint, which was dismissed without prejudice, became a nullity upon the filing of the amended complaint. See Young v. City of Mount Ranier, 238 F.3d 567, 573 (4th Cir. 2001) ("[A]n amended pleading supersedes the original pleading, rendering the original pleading of no effect. Thus, if an amended complaint omits claims raised in the original complaint, the plaintiff has waived those omitted claims.").

6

funds to First Tennessee . . . , Global Title transferred the funds . . . to [FMI.]" J.A. 34.

In support of its negligence cause of action, First Tennessee alleged that, as closing agent, Global had a duty to protect First Tennessee's interest in the funds. First Tennessee alleged that Global "breached the duty it owed to First Tennessee when it negligently transferred $2.5 million of First Tennessee's money to [FMI]," and that Global's negligence in returning the funds entitles it to recovery. J.A. 34. The complaint alleged no additional facts describing how or why Global gave the money to FMI -- there are no allegations, for example, that Global acted willfully or that Global acted in concert with FMI.[3]

---

[3] First Tennessee attached as exhibits to its intervention complaint certain documents evidencing the transactions at issue here. The documents included supplemental closing instructions executed by FMI and Global which stated that if the loan did not close, Global was "to either (1) return the unused cashier's check to [FMI]; or (2) return the funds via wire transfer directly to [First Tennessee]." J.A. 39, 42, 45. Relying on CACI International, Inc. v. St. Paul Fire & Marine Insurance Co., 566 F.3d 150 (4th Cir. 2009), the district court held that Virginia's eight-corners rule did not permit it to consider documents attached to the complaint. See id. at 156 (declining to consider documents attached to complaint "because Virginia courts have not signaled a readiness to look beyond the underlying complaint" when resolving duty-to-defend questions). But see Va. Sup. Ct. Rule 1:4(i) ("The mention in a pleading of an accompanying exhibit shall, of itself and without more, make such exhibit a part of the pleading." (emphasis added)). Although Appellants contend that the district court erred by refusing to consider the exhibits, we need not decide that
(Continued)

C.

Adopting the report and recommendation of the magistrate judge, see 28 U.S.C. § 636(b)(1)(B), the district court granted summary judgment in favor of St. Paul on the coverage question. Because the policy did not define "unauthorized," the district court, looking to Black's Law Dictionary, defined "unauthorized" as "'[d]one without authority'" or "'made without actual, implied, or apparent authority.'" J.A. 153 (quoting Black's Law Dictionary (9th ed. 2009)). The court then defined "authority" as "'[t]he right or permission to act legally on another's behalf; . . . the power of one person to affect another's legal relations by acts done in accordance with the other's manifestations of assent; the power delegated by a principal to an agent. . . .'" J.A. 153.

The district court concluded that, given the allegations in the complaint that the funds belonged to First Tennessee and that Global was to hold the funds in trust and distribute them at closing as directed by First Tennessee, Global's actions were "unauthorized" as a matter of law. The magistrate judge

---

question. As we will explain, the allegations of First Tennessee's complaint, even without consideration of the attached exhibits, are sufficient to trigger St. Paul's duty to defend.

8

explained this conclusion in the report and recommendation adopted by the district court:

> It is undisputed that these three [FMI]-originated loans never closed, and it is undisputed that First Tennessee never directed Global Title to transfer the funds to [FMI] despite the failure to close. Thus, Global Title's transfer of First Tennessee's funds to [FMI] constituted an unauthorized act that deprived the owner of the use of its funds. Accordingly, the "Handling of funds" provision excludes coverage for this unauthorized act.

J.A. 133. Thus, in this case, because First Tennessee did not authorize Global to return the funds to FMI, the court held Global's action was unauthorized within the meaning of the HOF Exclusion.


## II.

On appeal, Global and First Tennessee contend that the district court's interpretation of the HOF Exclusion was erroneous. They argue that under Virginia law, an act that an agent is authorized to perform does not become unauthorized simply because the agent performed the act negligently. And because negligent acts are not necessarily unauthorized acts, Appellants argue that the HOF Exclusion does not foreclose the possibility of coverage under the policy. We agree.

### A.

Because the policy did not define "unauthorized act," the district court properly defined "unauthorized act" as an act

9

taken without authority.  See, e.g., Scottsdale Ins. Co. v. Glick, 397 S.E.2d 105, 108 (Va. 1990) ("In the absence of a definition, words used in an insurance policy must be given their ordinary and accepted meaning.").  Nonetheless, when the HOF Exclusion is considered as part of the policy as a whole, we think it clear that the district court took too narrow a view of the precise "authority" necessary for an agent's action to be "authorized."

An insurance policy, of course, is a contract subject to the same rules of construction as any other contract.  See Virginia Farm Bureau Mut. Ins. Co. v. Williams, 677 S.E.2d 299, 302 (Va. 2009); Harleysville Mut. Ins. Co. v. Dollins, 109 S.E.2d 405, 409 (Va. 1959).  "The primary goal in the construction of written contracts is to determine the intent of the contracting parties . . . ."  Flippo v. CSC Assocs. III, L.L.C., 547 S.E.2d 216, 226 (Va. 2001) (internal quotation marks omitted); see Bender-Miller Co. v. Thomwood Farms, Inc., 179 S.E.2d 636, 639 (Va. 1971) ("[T]he intent of the parties as expressed in their contract controls.").

When determining the intent of the contracting parties, "the whole instrument is to be considered; not any one provision only, but all its provisions; not the words merely in which they were expressed, but their object and purpose, as disclosed by the language, by the subject matter, and the condition and

10

relation of the parties." Worrie v. Boze, 62 S.E.2d 876, 880 (Va. 1951) (emphasis added; internal quotation marks omitted); see Flippo, 547 S.E.2d at 226 ("[I]ntent is to be determined from the language employed, surrounding circumstances, the occasion, and apparent object of the parties." (emphasis added; internal quotation marks omitted)). In our view, the district court failed to properly consider the "object and purpose" of the insurance policy when determining the meaning of "unauthorized act" in the HOF Exclusion.

The object and purpose of the contract in this case is clear. The contract is a professional liability insurance policy that protects Global from liability for certain losses caused by Global while performing real-estate-related services in its capacity as an agent. "Authority," the focus of the district court's analysis, is of course a critical concept in the law of agency -- absent authority to act on behalf of another, there is no agency relationship. Within an agency relationship, however, questions about liability turn not on simple "authority," but on scope of authority. The principal is liable for the actions of the agent committed within the scope of authority, but not for actions outside the scope of the agent's authority. See, e.g., Allen Realty Corp. v. Holbert, 318 S.E.2d 592, 596 (Va. 1984) ("[A] principal is liable to third persons for wrongful acts an agent commits within the

11

scope of his employment, even if the principal does not approve or know of the misconduct . . . ."); Kern v. Freed Co., 299 S.E.2d 363, 364 (Va. 1983) ("If the agent exceeds his authority, the principal is not bound by the agent's acts.").

Because liability in the agency context -- the very risk addressed by the policy -- turns on the scope of the agent's authority, we believe that when the HOF Exclusion is considered in light of the purpose and subject-matter of the policy, the exclusion for losses caused by an "unauthorized act" must be understood as referring to an act outside the scope of the insured's authority. See London Guar. & Accident Co. v. C.B. White & Bros., 49 S.E.2d 254, 259 (Va. 1948) (explaining that insurance policy must be "construed in the light of the subject matter with which the parties are dealing and the words or phrases of the policy should be given their natural and ordinary meaning as understood in the business world." (emphasis added)); accord State Farm Mut. Auto. Ins. Co. v. Powell, 318 S.E.2d 393, 397 (Va. 1984). We believe this to be the most natural reading of the policy -- so construed, the policy imposes obligations on the insurer that track those of an agent's principal. Just as the principal would be liable for the wrongful act of his agent committed within the scope of the agent's authority but not for acts outside the scope of authority, the policy provides coverage for wrongful acts committed within the scope of the

12

insured's authority but not for acts committed outside the scope of the insured's authority.

Accordingly, the HOF Exclusion, as we conclude it must be interpreted, precludes coverage for claims of loss caused by any act <u>outside the scope of the insured's authority</u> that deprives an owner of the use of its funds. The question, then, is whether the allegations in First Tennessee's complaint clearly and unambiguously establish that Global's actions exceeded the scope of its authority as closing agent such that coverage for the claim is barred by the HOF Exclusion. See <u>Floyd v. Northern Neck Ins. Co.</u>, 427 S.E.2d 193, 196 (Va. 1993) ("[T]o be effective, the exclusionary language must clearly and unambiguously bring the particular act or omission within its scope.").

Under Virginia law, an "act need not be expressly or impliedly directed by the employer in order for the act to occur within the scope of the employment. Similarly, an act committed in violation of an employer's direction is not always beyond the scope of the employment." <u>Gina Chin & Assocs. v. First Union Bank</u>, 537 S.E.2d 573, 579 (Va. 2000).

Whether an agent acted within the scope of his authority turns not on whether the <u>particular act</u> at issue -- often a tort committed by the agent -- is "within the scope of the agent's authority, but [on] whether <u>the service itself in which the</u>

13

tortious act was done was . . . within the scope of such authority." Broaddus v. Standard Drug Co., 179 S.E.2d 497, 503 (Va. 1971) (emphasis added; internal quotation marks omitted). Under this standard, negligent and even willful and malicious acts of an agent are not necessarily outside the scope of the agent's authority. See Allen Realty Corp., 318 S.E.2d at 597 ("[A] principal is liable for negligent acts that its agent commits within the scope of his employment."); Commercial Bus. Sys., Inc. v. Bellsouth Servs., Inc., 453 S.E.2d 261, 266 (Va. 1995) (employee's "willful and malicious acts" done to advance his self-interest were not "conclusively" outside scope of employment because the acts were committed while the employee was performing his duties and "in the execution of the services for which he was employed").

In this case, First Tennessee asserted only a negligence claim against Global. First Tennessee did not allege that Global's actions were unauthorized or that Global acted outside the scope of its authority as closing agent, nor are there any other factual allegations in the complaint that would permit this court to conclude, as a matter of law, that the transfer was outside the scope of Global's authority. See Gina Chin & Assocs., 537 S.E.2d at 577 (listing factors relevant to determination of whether given action was within the scope of employment). Because a negligent act by an agent may still be

14

an act within the scope of the agent's authority, see Allen Realty Corp., 318 S.E.2d at 597, we agree with Appellants that the HOF Exclusion thus does not clearly and unambiguously encompass the conduct alleged in First Tennessee's complaint. See Floyd, 427 S.E.2d at 196.

St. Paul, however, argues that while the duty to defend is broad, the insured cannot create coverage by inventing scenarios not alleged in the complaint that theoretically could be covered by the policy. And in St. Paul's view, because the complaint does not allege that Global was attempting to return the funds to First Tennessee when it transferred them to FMI, Global's claim that it negligently performed an authorized act is inconsistent with the allegations of the complaint and does not trigger St. Paul's duty to defend. We disagree.

Although the complaint does not include details about how or why the transfer occurred, First Tennessee had no obligation to include any such additional details in its complaint. The allegations in the amended complaint were sufficient to support First Tennessee's negligence claim: that Global had a duty to protect First Tennessee's interest in the funds and to return the unused funds to First Tennessee; that Global breached that duty by returning the funds to FMI instead; and that First Tennessee suffered damages from Global's breach of its duties. See McGuire v. Hodges, 639 S.E.2d 284, 288 (Va. 2007) (listing

15

elements of negligence claim). The allegations of the amended complaint could "without amendment" support a judgment for negligence, and the allegations are therefore sufficient to trigger St. Paul's duty to defend. Parker v. Hartford Fire Ins. Co., 278 S.E.2d 803, 804 (Va. 1981) (per curiam).

B.

Upon concluding that coverage was barred by the HOF Exclusion, the district court held that St. Paul had no duty to defend Global or indemnify Global for any judgment that might be entered against it. Because the allegations of the complaint do not establish the applicability of the HOF Exclusion as a matter of law, the district court's ruling on the indemnification issue was premature. If the evidence in First Tennessee's action shows that Global's actions were outside the scope of Global's authority as closing agent, St. Paul will have no obligation to indemnify Global for the judgment. The possibility that St. Paul might not ultimately be responsible for the judgment, however, has no effect on St. Paul's obligation to defend Global against First Tennessee's claims. See Virginia Elec. & Power, 475 S.E.2d at 266 ("[T]he obligation to defend is not negated merely by the unsuccessful assertion of a claim otherwise facially falling within the risks covered by the policy. . . . The insurer has the obligation to defend the

16

insured in such circumstances even though the obligation to pay is not ultimately invoked.").

III.

For the reasons discussed above, we hold that the allegations of First Tennessee's complaint create a possibility of coverage under the policy's insuring clause and do not unambiguously fall within the scope of the HOF Exclusion. The district court therefore erred in concluding that St. Paul had no duty to defend or indemnify Global against First Tennessee's claims. Accordingly, we vacate the district court's judgment relieving St. Paul of its duty to defend and indemnify Global, and we remand the case to the district court. Upon resolution of First Tennessee's action against Global, the indemnification issue will be ripe for reconsideration by the district court.

<u>VACATED AND REMANDED</u>