**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 14-1823**

_____

DANNY RAY MARKS, JR.,

> Plaintiff - Appellant,

and

TIMOTHY B. JOHNSON,

> Plaintiff,

> v.

SCOTTSDALE INSURANCE COMPANY,

> Defendant - Appellee.

_____

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. David J. Novak, Magistrate Judge. (3:14-cv-00025-DJN)

_____

Argued: May 13, 2015                    Decided: June 29, 2015

_____

Before GREGORY and HARRIS, Circuit Judges, and HAMILTON, Senior Circuit Judge.

_____

Affirmed by published opinion. Judge Harris wrote the opinion, in which Judge Gregory and Senior Judge Hamilton joined.

_____

**ARGUED:** John Janney Rasmussen, INSURANCE RECOVERY LAW GROUP, PLC, Richmond, Virginia, for Appellant. John Becker Mumford, Jr., HANCOCK, DANIEL, JOHNSON & NAGLE, P.C., Glen Allen, Virginia, for Appellee. **ON BRIEF:** Eileen R. Geller, HANCOCK,

DANIEL, JOHNSON & NAGLE, P.C., Glen Allen, Virginia, for Appellee.

PAMELA HARRIS, Circuit Judge:

Plaintiff Timothy B. Johnson ("Johnson") is a member of the Northumberland Hunt Club (the "Hunt Club" or the "Club"). While hunting on Club-leased land, he unintentionally shot and injured Plaintiff-Appellant Danny Ray Marks, Jr. ("Marks"), who was driving nearby on a public road. Marks sued both Johnson and the Hunt Club in Virginia court, alleging that each had been negligent in connection with his accidental shooting. Defendant-Appellee Scottsdale Insurance Company ("Scottsdale"), which insures the Club under a general liability policy, denied coverage to Johnson, contending that the policy does not cover Club members for their personal recreational activities but only for liability arising from some official action of the Hunt Club or actions undertaken on behalf of the Club. The magistrate judge agreed with Scottsdale, and awarded it summary judgment. For the reasons that follow, we affirm.

**I.**

**A.**

Scottsdale has issued a commercial general liability policy to the Hunt Club ("the Policy"), under which it agrees to indemnify for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies," and to

3

defend against any suit seeking such damages. J.A. 143. The Hunt Club is the sole named insured on the Policy. But the Policy also includes an endorsement ("the Endorsement") modifying its coverage:

ADDITIONAL INSURED—CLUB MEMBERS . . .

WHO IS AN INSURED (Section II) is amended to include as an insured any of your members, but only with respect to their liability for your activities or activities they perform on your behalf.

J.A. 160. The Policy defines "you" and "your" as "the Named Insured shown in the Declarations," J.A. 28, which is the Hunt Club, J.A. 136, so that the Endorsement effectively extends Policy coverage to Club members "only with respect to [member] liability for [the Club's] activities or activities [members] perform on [the Club's] behalf." The question in this case is whether Johnson, a Club member, is an "insured" under the Endorsement for purposes of Marks's suit.

## B.

On January 3, 2013, Johnson was participating in a deer hunt with other members of the Hunt Club and their guests, on land leased by the Hunt Club and adjacent to Route 642 in Richmond County, Virginia. Johnson shot at a deer, and pellets from the shot traveled toward the highway and struck and injured Marks.

4

On December 16, 2013, Marks filed suit in Virginia court (the "Marks Suit"), seeking compensatory and punitive damages. As against Johnson, Marks alleged both negligence and gross negligence. According to the complaint, Johnson, who had extensive firearm training and was familiar with the location, took a position approximately 75 yards from the highway even though he knew or should have known that his gun could shoot further than 75 yards. When Johnson shot in the direction of the highway, Marks alleged, one of the pellets from Johnson's gun struck Marks in the head. Marks also brought a separate negligence claim against the Hunt Club, alleging that the Club leased the land where the shooting occurred, knew that its officers and members regularly hunted there, but failed to promulgate rules or regulations to protect the nearby public. The complaint did not seek to hold Johnson or any other Club member vicariously liable for the alleged negligence of the Club.

On January 13, 2014, Marks filed a second complaint in Virginia court, this time against Scottsdale, seeking a declaration under Virginia law that Scottsdale has a duty under the Policy to defend and indemnify Johnson in the Marks Suit. In that complaint, Marks alleged that the Endorsement, which insures Club members "with respect to their liability for [the Club's] activities," covered Johnson's shooting of Marks,

5

because Johnson is a Club member and hunting is one of "[the Club's] activities."

Scottsdale removed this case to federal court based on diversity jurisdiction, and filed a counterclaim seeking a declaration that Scottsdale owes no duty to defend or indemnify Johnson in the Marks Suit.[1] Scottsdale argued that the Endorsement does not cover Hunt Club members for their personal activities in connection with the Club, such as Johnson's hunting on the day of the shooting. Instead, according to Scottsdale, it covers members only to the extent they are vicariously liable for the Club's own activities or take action on behalf of the Club. Johnson joined the district court litigation, and though he subsequently filed for bankruptcy protection, the bankruptcy court allowed this action to proceed.

The parties consented to have a magistrate judge adjudicate the case and filed cross-motions for summary judgment. Adopting Scottsdale's reading of the Policy, the magistrate judge held that Scottsdale has no duty to defend or indemnify Johnson in the Marks Suit, and accordingly granted summary judgment to

---

[1] Scottsdale's counterclaim was limited to Marks's claims against Johnson; it did not contest its obligation under the Policy to defend the Hunt Club itself against Marks's claims. At oral argument, Scottsdale confirmed that it is defending the Hunt Club in the Marks Suit.

6

Scottsdale while denying the summary judgment motions of Marks and Johnson.  This timely appeal followed.

## II.

We review a grant of summary judgment de novo.  CACI Int'l, Inc. v. St. Paul Fire and Marine Ins. Co., 566 F.3d 150, 155 (4th Cir. 2009).  Because jurisdiction is based on diversity, we apply the choice-of-law rules of the forum state - here, Virginia.  Id. at 154.  In insurance cases, Virginia law looks to the law of the state where the insurance contract is written and delivered.  Id.  The parties agree that the Policy was written and delivered in Virginia and therefore that Virginia law governs.

### A.

In construing the Policy provision at issue, we are directed by Virginia law to apply ordinary contract-interpretation principles, deducing the parties' intent from the words of the Policy itself.  See Va. Farm Bureau Mut. Ins. Co. v. Williams, 677 S.E.2d 299, 302 (Va. 2009).  We are to give the text its "ordinary and customary meaning," Salzi v. Va. Farm Bureau Mut. Ins. Co., 556 S.E.2d 758, 760 (Va. 2002) (quoting Graphic Arts Mut. Ins. v. C.W. Warthen Co., Inc., 397 S.E.2d 876, 877 (Va. 1990)), and may not insert by construction a term that is not expressly in the contract, Lansdowne Dev. Co.,

7

_L.L.C. v. Xerox Realty Corp._, 514 S.E.2d 157, 161 (Va. 1999). Virginia does apply one rule of construction specific to insurance contracts and relevant here: If policy language is ambiguous, then it is to be construed against the insurer. _Williams_, 677 S.E.2d at 302. But – and equally relevant here – a term will not be deemed ambiguous unless it is "capable of more than one reasonable meaning" even after it has been examined in context. _Res. Bankshares Corp. v. St. Paul Mercury Ins. Co._, 407 F.3d 631, 636 (4th Cir. 2005).

The Endorsement in question, again, insures "any of [the Club's] members, but only with respect to [member] liability for [the Club's] activities or activities [members] perform on [the Club's] behalf." Marks concedes on appeal that the second clause – covering member activities performed on the Club's behalf – does not reach Johnson's hunting expedition, but argues that the first clause – member liability for Club activities – unambiguously does, because hunting is one of the Club's activities. Alternatively, Marks argues that the first clause is at least ambiguous on the point, and therefore must be construed in his favor.

We disagree. Instead, we agree with the magistrate judge and the other federal courts that have considered identical policy provisions: The clause covering Club members "with respect to [member] liability for [the Club's] activities"

8

unambiguously restricts coverage to situations involving a member's alleged vicarious liability for the activities of the Club as an entity. J.A. 384–87; see Everett Cash Mut. Ins. Co. v. Ins. Corp. of Hanover, Civ. A. No. 1:07-CV-0641, 2008 WL 4453113, at *5–6 (M.D. Penn. Sept. 30, 2008) (identical endorsement to hunt club insurance policy does not cover member's accidental shooting during recreational hunt); Lenox v. Scottsdale Ins. Co., No. Civ. 04-2282(SRC), 2005 WL 1076065, at *3–5 (D.N.J. May 5, 2005) (identical endorsement to beach club insurance policy does not cover member's accidental injury of guest on club property).[2]

First, even standing on its own, the phrase "[member] liability for [the Club's] activities" is quite clear. "Member liability for the Club's activities" is the language of vicarious liability, and it is most plainly read to apply "when a member is held vicariously liable for some activity undertaken

---

[2] In a third case, Mt. Hawley Ins. Co. v. Nat'l Cas. Co., Civ. A. No. 13-cv-01652-CMA-KLM, 2015 WL 428768, at *4–5 (D. Colo. Jan. 30, 2015), this one involving a national go-karting association, the court addressed a policy endorsement substantively identical to the second clause here, covering members when they are "acting on [the club's] behalf." Following Lenox and Everett Cash, as well as the magistrate judge in this case, the court held that the term "on behalf of" does not encompass the voluntary, recreational activities of members, but instead extends only to actions undertaken by members at the request or for the benefit of the club. See id. Again, on appeal, Marks concedes that the Endorsement's second clause is not applicable in this case.

9

by the Club as a corporate entity." Lenox, 2005 WL 1076065, at *4; see also Everett Cash, 2008 WL 4453113, at *5 ("club activities" refers to "those actions taken by the Club in its capacity as a non-profit corporate entity"); J.A. 387 (same). In his brief, Marks argues that the Policy covers his suit against Johnson because the shooting occurred "during" a Hunt Club activity, Appellant's Br. at 12, or "arose from" a Hunt Club activity, id. at 17. But that is not what the Policy says, and we cannot add words that are not there. See Lansdowne, 514 S.E.2d at 161. Members are covered with respect to their liability for the Club's own corporate activities, not with respect to anything they may do during or in connection with Club activities.

That reading is confirmed when we look at the Endorsement as a whole. The limiting terms with which the Endorsement begins – the Policy is modified to cover Club members, "but only with respect to [member] liability for [the Club's] activities or activities [members] perform on [the Club's] behalf" – "make clear that the Policy is not intended to cover every member pursuit at the Club." Lenox, 2005 WL 1076065, at *4. And that point is reinforced by the joint operation of the Endorsement's two clauses. The first, as we have explained, is most naturally read to invoke actions by the Club as an entity – entering into contracts, suing and being sued, buying and selling property –

10

for which a member might be held vicariously liable. The individual activities of Club members, by contrast, are covered by the second clause – "activities [members] perform on [the Club's] behalf" – but only when they are undertaken at the request or for the benefit of the Club, a condition that Marks concedes is not satisfied here. On Marks's reading, however, that restriction is entirely superfluous, because all member activities in connection with the Club are covered already, by the first clause. We decline to adopt a construction of the Endorsement that renders so much of it redundant. Cf. id. (party taking same position as Marks "essentially asks the Court to interpret this provision in such a way that the limiting language is irrelevant").

Marks's contrary argument rests almost exclusively on dictionary definitions of "activity," under which, he contends, "hunting" comfortably fits. We do not doubt that "hunting" constitutes an "activity" within the freestanding meaning of that word, and even an "activity" to which the Hunt Club is committed. And if the Policy broadly extended coverage to Club members for, say, "all member activities on Club property," or "all member activities within the scope of the Club's purpose," we would have a different case. See id. The problem for Marks is not the word "activity," but the words right around it in the Policy actually before us, extending coverage to Club members

11

"but only with respect to [member] liability for [the Club's] activities." That is the language, taken as a whole, that precludes Marks's interpretation, unambiguously covering Club members only with respect to their vicarious liability for the activities of the Club as an entity. See Gates, Hudson, & Assocs. v. Fed. Ins. Co., 141 F.3d 500, 502 (4th Cir. 1997) (contract term is deemed unambiguous if its meaning is clear in context).

**B.**

Having determined the Policy's scope of coverage, the rest of our task is straightforward. In deciding whether Scottsdale has a duty to defend Johnson in the Marks Suit, under Virginia's "eight corners rule" we look only to Marks's underlying complaint, and determine whether its allegations against Johnson come within the scope of the Policy's coverage. AES Corp. v. Steadfast Ins. Co., 725 S.E.2d 532, 535 (Va. 2012); see also CACI, 566 F.3d at 155–56; Fuisz v. Selective Ins. Co. of Am., 61 F.3d 238, 242 (4th Cir. 1995). If the complaint alleges any facts that, if proved, would render Scottsdale liable under the Policy for a judgment against Johnson, then Scottsdale must defend Johnson in the Marks Suit. See CACI, 566 F.3d at 155. But if it is clear based on the complaint that Scottsdale would not be liable under the Policy for any judgment based on the

12

allegations against Johnson, then Scottsdale has no such duty to defend. See id.

The complaint in the Marks Suit does not allege any facts that, if proved, would render Scottsdale liable as to Johnson under the Policy as we have construed it. Marks alleges only that Johnson, a member of the Club, was on land leased by the Club and regularly used by Club members when he negligently fired his gun. As Marks concedes, that is not enough to bring his claim under the Endorsement's second clause, for member activities "on [the Club's] behalf." Nor does the complaint seek to hold Johnson vicariously liable "for [the Club's] activities" so as to trigger coverage under the first clause. The complaint does raise a separate claim against the Club as an entity, charging it with negligence in failing to protect the safety of the nearby public – but what it does not do is seek to hold Johnson vicariously liable "for [the Club's] activities" in this regard. Instead, its allegations against Johnson rest only on "the recreational pursuits indulged in by Club members," see Everett Cash, 2008 WL 4453113, at *5, which, as we have explained, fall outside the scope of the Endorsement.[3]

---

[3] The facts alleged in the complaint give us no occasion to consider whether coverage under the first clause of the Endorsement might extend to situations in which a Club member has participated in a group activity organized or sponsored by the Club itself – say, an annual picnic, or official Club

13

Because it is clear from the Marks Suit complaint that Scottsdale would not be liable for any judgment against Johnson, Scottsdale has no duty to defend Johnson. It follows that Scottsdale also has no duty to indemnify Johnson in the Marks Suit. See Penn-America Ins. Co. v. Coffey, 368 F.3d 409, 413 (4th Cir. 2004) (duty to defend is broader than duty to indemnify); AES Corp., 725 S.E.2d at 535–36 (same). Accordingly, we hold that the magistrate judge properly granted summary judgment to Scottsdale and denied summary judgment to Marks and Johnson.[4]

## III.

For the foregoing reasons, we affirm the judgment of the magistrate judge.

AFFIRMED

---

breakfast. That question was reserved expressly by the magistrate judge, as well as by the court in Lenox, 2005 WL 1076065, at *5; see also Everett Cash, 2008 WL 4453113, at *5 (recreational hunting "outside the context of a club event" is not covered club activity), and we need not decide it today.

[4] In analyzing Scottsdale's duty to defend, the magistrate judge referred not only to the allegations of the Marks Suit complaint but also to undisputed facts adduced during discovery. To the extent the magistrate judge relied on materials outside the complaint, it appears to have erred under Virginia law. But the result is the same when we confine our analysis to the underlying complaint, and so the magistrate judge's conclusion is in any event correct. See United States v. Smith, 395 F.3d 516, 519 (4th Cir. 2005) (appellate court may affirm on any ground apparent in the record).

14